# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

       Plaintiff,

vs.                               No. CIV 02-0333 JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Plaintiff's Motion to Exclude the Rule 26 Expert Report Submitted in Benard's Supplement to His Response to Plaintiff's Amended Motion for Summary Judgment or at the Least to Strike the Medical Assertions of the Report; or in the Alternative for a Daubert Hearing, filed September 22, 2003 (Doc. 207) and Defendant Tom Benard's Motion to Strike, filed October 8, 2003 (Doc. 217). The Court has scheduled a Daubert hearing on December 29, 2003 to determine the admissibility of the proposed expert testimony. Thus, the primary issue remaining is whether the Court should consider the expert report of Joseph Ferrera, or portions thereof, in opposition to the Plaintiff's Amended Motion for Summary Judgment. The Court finds that Mr. Ferrera is not qualified to give the opinions contained in the report, it is unclear what materials he relies upon to reach his conclusions, and the conclusions are unreliable and speculative. Accordingly, the Court will grant the Plaintiff's motion.

## BACKGROUND

On May 22, 2003, Defendant Tom Benard ("Benard") supplemented his Response to Plaintiff's Amended Motion for Summary Judgment. See Supplementation of Defendant Tom

Benard's Response to Plaintiff's Amended Motion for Summary Judgment (Doc. 127).  Benard attached the rule 26 report and resume of Joseph Ferrera ("Ferrera") to refute the allegation that the injury which the Plaintiff, Robert Hernandez ("Hernandez"), suffered occurred as a result of Benard striking Hernandez in the head during his arrest on April 24, 2000.  Benard presents the report to create a factual issue whether it is more likely than not that an asp blow by Benard caused the injury.

In his expert report, Ferrera describes the Parasympathetic Nervous System ("PNS") and the Sympathetic Nervous System ("SNS") and their effects on delayed bleeding.  Ferrera also discusses his opinions regarding the origin of Hernandez' head wound.  He opines that it is more likely that an asp blow by Benard did not cause the wound.  Ferrera suggests several alternative ways in which the wound could have occurred.

Hernandez challenges the opinions in Ferrera's report on several grounds.  First, while conceding that what Ferrera states concerning the function of the PNS and SNS is basically correct, Hernandez goes on to argue that it is a medical reality that there is a heavier concentration of vascular networking in the scalp than in any other part of the human body.  As a result, even the most minor scalp injuries will bleed profusely almost immediately upon infliction.  Moreover, the PNS and SNS model applies to smooth muscle groups, which are not present in the scalp.  Thus, Hernandez contends that Ferrera's conclusion regarding delayed bleeding is unsound.  Second, Hernandez challenges Ferrera's qualifications as a medical expert.  Third, Hernandez asserts that Ferrera's conclusions are speculative and do not satisfy the Daubert standard.

Benard responded to Hernandez' motion by requesting that the Court strike the motion. Benard argues that the motion is improper because Hernandez has previously filed another motion seeking to exclude Ferrera's testimony at trial.  In the alternative, Benard contends that the Court

2

should deny Hernandez' motion because Ferrera's expert report is properly admitted to rebut Hernandez' summary judgment motion.

## REQUIREMENTS FOR AFFIDAVITS

An affidavit made under oath in support or in opposition to a motion for summary judgment must comply with rule 56(e) of the Federal Rules of Civil Procedure.  Generally, rule 56(e) requires that affidavits be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  An affidavit that an expert submits need not be based upon personal knowledge, provided that the affidavit complies with rules 702-705 of the Federal Rules of Evidence. See City of Chanute, Kan. v. Williams Natural Gas Co., 743 F. Supp. 1437, 1444 (D. Kan. 1990). Even though an expert's affidavit need not comply with rule 56(e)'s personal knowledge requirement, the affidavit must still be based upon facts that would be admissible, and the expert must be competent to testify on matters related to the expert's opinion. See Williams v. Ford Motor Co., 187 F.3d 533, 543-44 (6th Cir. 1999).  When considering the admissibility of an expert affidavit for purposes of a summary judgment, a court must first determine if the expert's opinion would be admissible at trial.

## DAUBERT STANDARD

Under rule 702 of the Federal Rules of Evidence, expert testimony is allowable if the witness is qualified as an expert and his or her specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The Court has a "gatekeeping" obligation to determine the admissibility of all expert testimony. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)(citing Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579

(1993)).   Expert testimony is admissible only if it is both relevant and reliable.   See Alfred v. Caterpillar, Inc., 262 F.3d 1083, 1086 (10th Cir. 2001).

The Supreme Court of the United States amended Rule 702 in December of 2000 in response to Daubert and its progeny, including Kumho Tire.  Rule 702 now allows expert opinion testimony if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  Generally, the focus is on the principles and methodologies, not the conclusions generated.  See Daubert v. Merrell Dow Pharms. Inc., 509 U.S. at 595.  However, "when an expert . . . reaches a conclusion that other experts in the field would  not reach, the trial court may fairly suspect that the principles and methods have not been faithfully applied."  Fed. R. Evid. 702 Advisory Committee Notes (citing Lust v. Merrell Dow Pharms., Inc., 89 F.3d 594, 598 (9th Cir. 1996)).  The Court must therefore look at the relevant principles and methods, and how the expert has applied them to this case.

The reliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology, and the link between the facts and the conclusion drawn. See Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999).  Consequently, the Court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case.  See, e.g., Kumho Tire v. Carmichael, 526 U.S. at 149-52; Heller v. Shaw Indus., Inc., 167 F.3d at 155.  The Court has discretion how to approach the task of making reliability findings.  See Kumho Tire v. Carmichael, 526 U.S. at 152; Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000); United States v. Velarde, 214 F.3d 1204, 1208-1209 (10th Cir. 2000).

In making its reliability determination, the trial court may use the <u>Daubert</u> factors and ask the following questions: (i) whether the theory or technique can be or has been tested; (ii) whether it has been subjected to peer review and publication; (iii) whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (iv) whether the theory or technique is generally accepted within the relevant scientific community.  <u>See</u> <u>Kumho Tire v. Carmichael</u>, 526 U.S. at 149.  The Court must, however, keep in mind that these factors are not exclusive and may not apply in all cases.

In any event, "nothing in either <u>Daubert</u> or the  Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).  The trial court's gatekeeping function requires more than simply taking the expert's word for it.  <u>See</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1319 (9th Cir. 1995)("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under <u>Daubert</u>, that's not enough.").  The more subjective and controversial the expert's inquiry, the more likely the Court should exclude the testimony.  <u>See</u> <u>O'Connor v. Commonwealth Edison Co.</u>, 13 F.3d 1090, 1107 (7th Cir. 1994)(holding trial court properly excluded expert testimony based on a completely subjective methodology).

## ANALYSIS

The proffered expert report and the opinions expressed therein do not satisfy rule 702 and the <u>Daubert</u> reliability test.  The report is not proper to rebut Hernandez' contention that he is entitled to summary judgment.  The Court initially notes that the letter Ferrera submitted is not an affidavit under oath.  Furthermore, Ferrera is not qualified to offer some of the opinions contained in his report.  Additionally, his report fails to inform the Court of the basis for his opinions thereby

rendering his conclusions unreliable and speculative.

## I.    FERRERA IS NOT QUALIFIED AS A MEDICAL EXPERT.

In his report, Ferrera gives several opinions that involve medical expertise.  Ferrera has no medical training or experience on which to base his opinion.  He has not attended medical school.  According to the resume submitted contemporaneously with the rule 26 report, he has not received basic first aid instruction since 1994.  It is not reasonable to require Hernandez to defend against the medical opinion of a proffered expert who has no more than basic first-aid training.

Ferrera may have specialized knowledge and/or experience in subduing and disarming a suspect, as well as in self-defense procedures.  He lacks, however, the specialized knowledge to determine a fact in issue by means of medical testimony.  Ferrera is not qualified as an expert in human anatomy or physiology.  Thus, he does not have the knowledge, skill, training, or education to offer opinion testimony concerning the function of the PNS or SNS.  Ferrera is not an expert in the area of medical principles, and consequently the Court will not consider his opinions when deciding the Plaintiff's Amended Motion for Summary Judgment.

## II.   IT IS UNCLEAR WHAT MATERIALS FERRERA RELIED UPON TO REACH HIS CONCLUSIONS.

Ferrera also does not show how his experience is reliably applied to the facts of this case.  If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts.  Ferrera does not explain or mention what medical standards he relies upon to support his opinion on the functioning of the PNS and SNS.  Ferrera bases his theory concerning the function of PNS and SNS on police department training

instead of medical training.  Ferrera's report does not demonstrate that he has done sufficient research to support his conclusion that Hernandez' head injury more likely than not occurred before Benard allegedly struck him with his asp.

### III.   FERRERA'S THEORY AND OPINIONS ARE NOT RELIABLE.

Ferrera is relying on medical principles to justify his opinion that Hernandez' head injury did not occur as alleged in the Complaint.  Ferrera alleges that the SNS prevented Hernandez' injury from beginning to bleed until after he began to relax.  Hernandez argues that the PNS and SNS deal with the contraction and relaxation of the smooth muscle groups of the human body.  There are, however, no smooth muscles in the human scalp.  So while Ferrera's conclusions may be true of an injury to any of the smooth muscle groups, his methodology cannot and does not apply in this case, which involves an injury to the scalp.  As a result, it is highly probable that a medical expert would not have come to the same conclusion.  Therefore, Ferrera has improperly applied these principles and this methodology to the facts of this case, rendering his opinion suspect.  See Lust v. Merrell Dow Pharms., Inc., 89 F.3d at 598.  Accordingly, Ferrera's theory and opinions concerning a delayed bleeding scenario of Hernandez' scalp wound are misleading and unreliable.

### IV.   FERRERA'S CONCLUSIONS ARE SPECULATIVE.

Ferrera's alternative theories of how Hernandez may have been injured are subjective and based on speculation.  Ferrera speculates on other sources that may have caused Hernandez' injury.  Ferrera is relying solely or primarily on possibilities instead of probabilities.  Ferrera's conclusion that Hernandez' injuries may not have occurred as alleged in the Complaint is speculation.  This speculation renders the report unreliable.  Accordingly, the Court will exclude his opinions as to other possible sources of Hernandez' head wound from consideration of the Plaintiff's summary judgment

motion.

## V.    THE COURT WILL DENY BENARD'S MOTION TO STRIKE HERNANDEZ' MOTION.

Benard moves the Court to strike Hernandez' motion because it is needless, repetitive, prejudicial, and harassing.  Hernandez has filed an almost identical motion seeking the same relief, which is still pending this Court's review.  Thus, Benard argues that there is no need for the present motion.  This motion addresses the same report that Hernandez seeks to exclude by his motion filed June 17, 2003.  See Plaintiff's Motion to Exclude the Rule 26 Expert Report and Proposed Testimony of Joseph Ferrera; or in the Alternative for a Daubert Hearing (Doc. 139).  Benard filed his Response to Hernandez' first motion to exclude on July 15, 2003 (Doc. 147), and Hernandez subsequently filed his Reply and Notice of Completion of Briefing concerning that motion on August 5, 2003 (Docs. 162 and 163).  Thus, Hernandez' first motion is ripe for decision.

The Federal Rules of Civil Procedure provide that all signed, written motions submitted to the Court must attest that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, [the motion] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . ."  Fed. R. Civ. P. 11(b)(1).  Benard contends that Hernandez has failed to comply with rule 11.  Benard argues that the only reason Hernandez filed a second motion seeking the same relief approximately three months later, and a little over one month after the Notice of Completion of Briefing, is to harass and cause unnecessary delay and expense, prejudicing Benard.

Benard argues that Hernandez could have sought to exclude Ferrera's expert report from any consideration with his Amended Summary Judgment at the time he filed his first motion.  Benard

supplemented his Response to Hernandez' Amended Motion for Summary Judgment on May 22, 2003, including Ferrera's expert report.  Hernandez filed his Response to Benard's supplementation on June 18, 2003, one day after he filed his first motion to exclude Ferrera' s expert report and testimony.  See Plaintiff's Response and Motion to Exclude (Docs. 139 and 142).

Hernandez, in his Reply in support of his first motion, conceded that he is only "contesting the report and testimony concerning the use of medical principles relating to the theory of delayed bleeding."  See Plaintiff's Reply at 6 (Doc. 162).  Hernandez' second motion to exclude the rule 26 report, however, seeks to exclude the report in its entirety, in contravention of Hernandez' earlier assertions.  Benard argues that Hernandez should not be allowed to file a second motion and re-brief the precise issue that is already before this Court, pending the Court's review and determination.  In this situation, however, the Court does not see a need to strike the second motion.  Hernandez states that he inadvertently did not move to strike the affidavit of Ferrera in earlier pleadings and apologizes to the Court and to opposing counsel for requesting at this late date that the Court strike the expert report.  Moreover, Hernandez' first motion seeks to exclude Ferrera's testimony at trial, while the second motion requests that the Court not consider the expert report when deciding the Plaintiff's summary judgment motion.

**IT IS THEREFORE ORDERED** that the Plaintiff's Motion to Exclude the Rule 26 Expert Report Submitted in Benard's Supplement to his Response to Plaintiff's Amended Motion for Summary Judgment or at the Least to Strike the Medical Assertions of the Report; or in the Alternative for a Daubert Hearing is granted; Defendant Tom Benard's motion to strike the motion is denied; and the Court will not consider Mr. Ferrera's expert report  when deciding the Plaintiff's Amended Motion for Summary Judgment.

_____
UNITED STATES DISTRICT JUDGE

Anthony James Ayala
Albuquerque, New Mexico

     *Attorney for the Plaintiff*


Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendant Tom Benard*


Stephanie M. Griffin
Assistant City Attorney
Albuquerque, New Mexico

     *Attorney for the Defendant City of Albuquerque*