IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

    Plaintiff,

vs.                                                       No. CIV 02-0333 JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Plaintiff's Amended Motion for Summary Judgment, filed August 6, 2002 (Doc. 21). The primary issue is whether Defendant Tom Benard's use of force against the Plaintiff was objectively unreasonable and therefore excessive as a matter of law. The Court finds that the record is insufficient to establish that Benard's conduct was objectively unreasonable as a matter of law. Accordingly, the Court will deny the Plaintiff's motion for summary judgment. Because the Court finds, however, that there are no genuine issues of material fact with respect to certain discrete acts by Benard, those acts are established as a matter of law for purposes of the trial in this matter.

**FACTUAL BACKGROUND**

    On April 23, 2000, police officers identified the Plaintiff, Robert Hernandez ("Hernandez"), as a murder suspect. See Affidavit of Tom Benard ¶ 3-4, at 1 (executed August 16, 2002). The police arrested Hernandez based on this identification. See Affidavit of Robert Hernandez ¶ 1, at 1 (executed July 26, 2002). The police later determined that this identification was in error. See id.

After observing Hernandez in his vehicle, and while believing he was a murder suspect, police officers attempted to make contact with Hernandez and to pull over his vehicle. In spite of the officers' commands to pull over, Hernandez sped away, which resulted in a high speed motor vehicle chase between Hernandez and several police officers. See Benard Affidavit ¶ 3,5, at 1-2. The motor vehicle chase ended at the intersection of Edith and Cesar Chavez when Hernandez lost control of his vehicle and crashed. See Supplementary Offense Report at 5.

After Hernandez' vehicle crashed, Officer Schnicke accidently hit Officer G. Callaghan with his vehicle. See id. at 5. After Schnicke hit Callaghan, the officers' attention was drawn away from Hernandez and toward the injured officer. See Grand Jury Testimony at 40; Offense Report at 5. As a result of this distraction, Officer Elrick apprehended Hernandez by himself, still believing Hernandez to be a dangerous murder suspect. See Benard Affidavit ¶ 6, at 2. Officer Elrick physically took custody of Hernandez by forcibly pinning him to the ground. See Amended Complaint for Violations of Constitutional Rights ¶ 2.2, at 3; Hernandez Affidavit ¶ 2, at 1. Officer Schnicke then placed handcuffs on Hernandez. See Amended Complaint ¶ 2.2, at 3; Hernandez Affidavit ¶ 2, at 1.

The parties disagree on the level of Benard's involvement in events surrounding Hernandez' arrest. Benard admits that he struck Hernandez in the leg with his baton, but contends that he did so because Hernandez was resisting the officers' efforts to place Hernandez in handcuffs. See Benard Affidavit ¶¶ 8-9, at 2. On the other hand, Hernandez contends that he did not resist arrest. See Hernandez Affidavit ¶ 3, at 1. Instead, he asserts that, after he was in custody and mechanically restrained, Benard approached him with an extended steel baton and struck him repeatedly. See Amended Complaint ¶ 2.6, at 3-4; Offense Report at 8; Hernandez Affidavit ¶ 5, at 1. Hernandez

2

maintains that at least one blow from Benard's baton was to Hernandez' head, causing a loss of consciousness, a concussion, and severe bleeding. See Hernandez Affidavit ¶ 5-6, at 1-2; Offense Report at 6; Photos of Head Injuries; and Amended Complaint ¶ 2.8, at 4. Hernandez also alleges that Benard's unprovoked beating injured his leg. See Hernandez Affidavit ¶ 6, at 2; Offense Report at 6. Hernandez contends that Schnicke's belt tape recorder recorded Benard bragging about needlessly beating Hernandez to another officer, saying "I popped him one good in the head for you." Offense Report at 5; Grand Jury Testimony at 54; Amended Complaint ¶ 2.10, at 4.

Benard asserts that the force which he used on Hernandez was commensurate with the force necessary to protect the officers at the scene, to protect Hernandez, and to diffuse the volatile situation. During and immediately following the motor vehicle chase, when the officers took Hernandez into custody, they believed that Hernandez was a murder suspect, actively fleeing capture. Benard asserts that Hernandez' conduct during the chase was reckless, dangerous, and done in disregard for the health and safety of himself, the public and the involved officers.

A Bernalillo County Grand Jury subsequently indicted Benard for Aggravated Battery. See Indictment. He entered into a negotiated plea and disposition agreement in which he pled guilty to battery upon Hernandez. See Plea Agreement. Benard asserts that his plea is consistent with striking Hernandez across the legs. Hernandez contends that Benard's guilty plea is an admission that the amount of force used on Hernandez was objectively unreasonable. Hernandez has moved for summary judgment under rule 56 arguing that Benard's conduct constitutes excessive force as a matter of law.

## **STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where no genuine issue of material fact remains for trial and

3

the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 598 (1986). One of the principal purposes of the summary judgment rule is to isolate and to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. at 323-24. As such, the Court's role on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

To survive a motion for summary judgment, the defendant must establish a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. at 586. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249-50. The defendant must show more than just some metaphysical doubt as to the material facts. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. at 586-87 (citing DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (2nd Cir. 1949)(L. Hand, J.), cert. denied, 338 U.S. 943, (1950)). The Court will not consider factual disputes that are irrelevant or unnecessary. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

## CLAIMS AT ISSUE

In his response to Hernandez' summary judgment motion, Benard contends that it is unclear which legal claim or claims this motion addresses. The motion does not request entry of judgment on all of Hernandez' claims. Given the arguments made in the supporting memorandum, the Court assumes that Hernandez is arguing that Benard's conduct was a violation of the Fourth Amendment

4

because Benard used excessive force as a matter of law. The Court will thus address this argument.

The Court notes that Hernandez' original Complaint did not contain allegations of violation of the Fourth Amendment. The Complaint expressly alleges violations of article II, § 10 of the New Mexico Constitution. See Notice of Removal with State Court Complaint ¶ 21, at 4 (Doc. 1). Hernandez' supporting memorandum does not address this claim. Since the time Hernandez filed his motion for summary judgment, the Court granted leave to file an amended complaint. The Amended Complaint does contain specific allegations of excessive force in violation of the Fourth Amendment. See Amended Complaint ¶ 3.4, at 5.

## **LAW GOVERNING EXCESSIVE FORCE CLAIMS**

The Fourth Amendment to the United States Constitution guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. Graham v. Connor, 490 U.S. 386, 394 (1989). "It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." Coolidge v. New Hampshire, 403 U.S. 443, 454 (1971)(quoting Boyd v. United States, 116 U.S. 616, 635 (1886)). State officials sued in their individual capacities based on official action can be held liable for damages under 42 U.S.C. §1983. See Hafer v. Melo, 502 U.S. 21, 23 (1991).

The Fourth Amendment prohibition against unreasonable seizures permits law enforcement officers to use only as much force to effect an arrest as is "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S. at 397. Courts must analyze claims that a law enforcement officer used excessive force in the course of a seizure under the Fourth Amendment's objective reasonableness standard, which requires the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental

interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985))(internal quotation marks omitted).

Under the Fourth Amendment, to determine whether the force used during a particular seizure is reasonable, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. at 397. See Austin v. Hamilton, 945 F.2d 1155, 1158 (10th Cir. 1991)(recognizing Graham v. Connor test of reasonableness), overruled on other grounds, Johnson v. Jones, 515 U.S. 304, 307 (1995). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Graham v. Connor, 490 U.S. at 396 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)).

Proper application of the objective reasonableness standard requires careful attention to the facts and circumstances of each particular case. See Graham v. Connor, 490 U.S. at 396. Weighing the individual intrusion and the governmental interests involved requires evaluation of such factors as: (i) the severity of the crime at issue; (ii) whether the suspect poses an immediate threat to the safety of the officers or others; and (iii) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. See id. A law enforcement officer's "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. As such, the reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

The question that regularly confronts the courts in excessive force cases is precisely how much force should be considered "objectively reasonable." The Supreme Court of the United States has held that the question is "whether the totality of the circumstances justifie[s] a particular sort of

6

. . . seizure." Id. (quoting Tennessee v. Garner, 471 U.S. at 8-9). The Supreme Court explains this objective inquiry into the reasonableness of a police officer's conduct by stating that

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

Graham v. Connor, 490 U.S. at 396-97 (internal quotation marks omitted).

## LEGAL ANALYSIS

### I. GENUINE ISSUES OF MATERIAL FACT EXIST PRECLUDING JUDGMENT AS A MATTER OF LAW WHETHER BENARD'S CONDUCT WAS OBJECTIVELY UNREASONABLE IN LIGHT OF ALL THE FACTS AND CIRCUMSTANCES.

In this case, Hernandez contends that three police officers employed by the Albuquerque Police Department stopped him, forced him from his vehicle, pinned him to the ground, and handcuffed him. Subsequently, Benard struck Hernandez with his baton. Hernandez contends that at no time after the police stopped him did he try to resist or flee. Nevertheless, Benard approached Hernandez as he was restrained and repeatedly struck him with a steel police baton about the head and body. Hernandez contends that any reasonable police officer could infer by Hernandez' actions that the police had subdued him, that he could not escape, that he was not making any attempt to escape, and that he posed no threat to the officers or others when Benard began his assault on Hernandez with a steel baton.

Accordingly, Hernandez argues that the blows were gratuitous and therefore unreasonable under the circumstances. See Frazell v. Flanigan, 102 F.3d 877, 884 (7th Cir. 1996)(jury finding that it was objectively unreasonable, in light of all facts and circumstances, for police officer to strike a handcuffed suspect with his club or nightstick; issue not specifically decided on appeal); Rambo v.

Daley, 68 F.3d 203, 207 (7th Cir. 1995)("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect into a squad car by breaking his ribs."); McDonald v. Haskins, 966 F.2d 292, 295 (7th Cir. 1992) ("It should have been obvious to Haskins that his threat of deadly force--holding a gun to the head of a 9-year-old and threatening to pull the trigger--was objectively unreasonable given the alleged absence of any danger to Haskins or other officers at the scene and the fact that the victim, a child, was neither a suspect nor attempting to evade the officers or posing any other threat."). Hernandez concedes that it is one thing for the police to use force in subduing a potentially violent or dangerous suspect; it is another matter, however, for the police to gratuitously beat him. That a certain degree of force may have been justified early in an encounter does not justify continued force once the police have subdued and restrained the suspect. See Ellis v. Wynalda, 999 F.2d 243, 247 (7th Cir. 1993)("When an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity.") .

The Graham v. Connor factors, as applied to this case, suggest that: (i) the police officers believed that Hernandez was a murder suspect, who was actively fleeing capture in a stolen vehicle; (ii) that, at least before the time of his arrest, Hernandez was acting in a reckless manner, fleeing from police officers at high speeds in residential areas and eventually losing control and crashing his vehicle; and (iii) Benard believed that Hernandez continued to resist arrest while officers were attempting to take him into custody. See Benard Affidavit ¶¶ 7-9, at 2.

There are at least three material facts which are in dispute precluding the entry of judgment on whether the force that Benard used was reasonable: (i) whether Benard struck Hernandez before or after the officers handcuffed him; (ii) whether Benard struck Hernandez in the head; and (iii) whether Hernandez was resisting arrest.

### A.   THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER BENARD STRUCK HERNANDEZ BEFORE OR AFTER THE OFFICERS HANDCUFFED HIM.

Benard contends that he struck Hernandez' legs with the baton so that Hernandez could be handcuffed. See Benard Affidavit ¶ 8, at 2. Similarly, Sergeant R. Johnson stated that he observed Benard "execute two forward strikes," but could not see what Benard was striking, and thereafter Johnson observed Officers Elrick and Schnicke handcuffing Hernandez. See Offense Report at 8. Finally, three lay witnesses provided statements. The first witness, Joanna Romero, noted that an officer struck Hernandez with a baton after he was handcuffed. See id. at 10. The second witness, Victor Wilson, asserted that he did not observe any officer strike Hernandez with a baton, but did observe the officers handcuffing Hernandez. See id. at 12. Finally, Andres Carreon stated that he observed "several officers" with their batons hitting a handcuffed man on the ground. See id.

The distinction when Benard struck Hernandez is important. It is one of several facts that the Court must consider to determine if Benard's conduct was objectively reasonable. See Graham v. Connor, 490 U.S. at 396; McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988)(discussing strike by officer after suspect was handcuffed and repeating prior holdings that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line). Hernandez cites two cases involving force used on a suspect who is already in handcuffs, which suggests that Hernandez views this fact as material. See Frazell v. Flanigan, 102 F.3d 877 (7th Cir. 1996); Rambo v. Daley, 68 F.2d 203 (7th Cir. 1995). Because the record contains evidence upon which a jury could resolve this issue in favor of either party, a genuine issue for trial exists. Thus, Hernandez has not met the burden necessary to support the entry of summary judgment.

9

### B. THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER BENARD STRUCK HERNANDEZ IN THE HEAD.

Hernandez contends that Benard struck him in the head with his baton. See Hernandez Affidavit ¶ 5, at 1. Benard denies striking Hernandez in the head. See Benard Affidavit ¶ 10, at 2; Grand Jury Testimony at 44. Benard has consistently stated that he struck Hernandez only in the leg in an effort to subdue him so that he could be handcuffed. See id. ¶ 8, at 2; Grand Jury Testimony at 44. Benard contends that his entry of a guilty plea to a misdemeanor battery charge is consistent with his statements that he did not strike Hernandez in the head. See, e.g., N.M.S.A. 1978 § 30-3-5 (committing aggravated battery with a deadly weapon or in a manner whereby great bodily harm can be inflicted would be a third degree felony).

While Benard admits to stating to Callaghan that he "popped [Hernandez] one good in the head . . . .," Benard asserts that he made the statement only to calm Callaghan and prevent him from going into shock. Grand Jury Testimony at 43, 54. Elrick stated that he did not actually see Benard strike Hernandez in the head, but only noticed Hernandez bleeding and looked back and saw Benard holding his baton in his right hand. See Offense Report at 5. Elrick also stated that Benard told him several days after the incident that he hit Hernandez with his hand. See id. Benard denies telling Elrick that he hit Hernandez with his hand. See Grand Jury Testimony at 55. Detective S. Hall stated that he heard someone in the crowd say, "They're beating him." Offense Report at 8. He then turned to see Benard straddling Hernandez and placing his baton into its holster. See id. None of the other witnesses saw Benard strike Hernandez in the head.

Whether Hernandez sustained a blow to his head is material to a finding that the force was either reasonable or unreasonable. Because the record contains evidence upon which a jury could resolve this issue in favor of either party, a genuine issue for trial exists. Thus, Hernandez has not

10

met the burden necessary to support the entry of summary judgment.

## C. THERE IS A GENUINE ISSUE OF MATERIAL FACT WHETHER HERNANDEZ WAS ACTIVELY RESISTING ARREST.

Hernandez alleges that he did not resist arrest after he crashed his vehicle. See Hernandez Affidavit ¶ 3, at 1. Hernandez also contends that Elrick and Schnicke stated that Hernandez was not actively resisting arrest. A review of the Supplementary Offense Report, however, shows that Elrick and Schnicke made no statements to either support or contradict this position. See Offense Report at 4-5, 11-12. In his affidavit, Benard stated that Hernandez was resisting and kicking with his legs so that the officers could not handcuff him. See Benard Affidavit ¶ 8, at 2. Thus, there are genuine issues of material fact with respect to the issue whether Hernandez was resisting arrest. The record contains evidence upon which a jury could find in favor of either Hernandez or Benard on this issue. Accordingly, summary judgment is not appropriate.

## II. ALTHOUGH ISSUES OF MATERIAL FACT PRECLUDE A FINDING THAT BENARD'S USE OF FORCE WAS EXCESSIVE AS A MATTER OF LAW, THERE ARE SEVERAL FACTUAL ISSUES AS TO WHICH BENARD HAS FAILED TO RAISE A GENUINE ISSUE FOR TRIAL.

Hernandez alleges that Benard struck him in the leg with his steel baton. See Hernandez Affidavit ¶ 6, at 2. Benard does not dispute this allegation. Benard admits that he struck Hernandez twice in the leg with his baton. See Benard Affidavit ¶ 8, at 2; Grand Jury Testimony at 46. Accordingly, the Court finds, a matter of law, that Benard struck Hernandez twice in the leg with his baton.

It is also undisputed that Benard entered a guilty plea in state court to a misdemeanor count of aggravated battery. See Transcript of Plea Hearing at 5, ln. 1-2 (February 20, 2002). In determining the preclusive effect of prior determinations in state judicial proceedings, a federal court

11

must apply state law.  See Pittsburg County Rural Water Dist. No. 7. v. City of McAlester, 346 F.3d 1260, 1273 (10th Cir. 2003).  The Supreme Court of New Mexico has held that "absent a plea of guilty, proof of conviction of criminal charges is inadmissible in the trial of a subsequent civil action for tort arising out of the same act."  New Mexico Physicians Mut. Liability Co. v. LaMure, 116 N.M. 92, 100, 860 P.2d 734, 742 (1993)(quoting Gray v. Grayson, 76 N.M. 255, 256, 414 P.2d 228, 229 (1966)).  Federal law also provides that such a plea is admissible in a subsequent civil trial as an admission.  See McCormick v. United States, 539 F. Supp. 1179 (D. Colo. 1982).  Thus, because Benard entered a guilty plea to aggravated battery, both the plea and the conviction are admissible in this civil case.

Aggravated battery is defined as "the unlawful touching or application of force to the person of another with intent to injure that person or another."  NMSA 1978 § 30-3-5(A).  Benard admitted these elements as true by entering a guilty plea.  While Hernandez may introduce the guilty plea as evidence at trial, this admission does not conclusively establish liability.  See McCormick v. United States, 539 F. Supp. at 1183 (admitting guilty plea to the traffic offense of running a red light in subsequent civil negligence action).  Benard may attempt to rebut or explain the plea.  See id.

**IT IS THEREFORE ORDERED** that the Plaintiff's Amended Motion for Summary Judgment is denied.  The Court finds, however, that the Plaintiff has established the following facts as a matter of law: (i) that Defendant Benard struck the Plaintiff twice on the leg with his baton; and (ii) that Defendant Benard previously admitted to the elements of aggravated battery.  Defendant Benard is precluded from challenging these facts at trial, with the exception that he may attempt to rebut or explain his prior admission regarding the elements of aggravated battery.

12

                                              _____
                                              UNITED STATES DISTRICT JUDGE

Anthony James Ayala
Albuquerque, New Mexico

        *Attorney for the Plaintiff*


Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

        *Attorneys for the Defendant Tom Benard*


Stephanie M. Griffin
Assistant City Attorney
Albuquerque, New Mexico

        *Attorney for the Defendant City of Albuquerque*