IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

    Plaintiff,

vs.                                              No. CIV 02-0333   JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Tom Benard's Motion in Limine to Exclude the Testimony of Maurice Moya; or in the Alternative, Motion for a Daubert Hearing (filed December 9, 2003)[Doc. 237].  The primary issue is whether the Court should allow Moya's limited testimony on standard operating procedures.  Because this Court has already determined in a prior case that the Court should not admit evidence of less intrusive alternatives, and that now appears to be all that Moya wants to discuss in his testimony, the Court will grant the motion to exclude certain testimony of Moya and exclude him as a witness in this case.

## BACKGROUND

Hernandez is alleging that Benard violated his constitutional rights when Benard used excessive force against him.  He is also alleging that the use of such force is contrary to the Standard Operating Procedures ("SOPs") that the Albuquerque Police Department ("APD") promulgated and the City of Albuquerque approved.  Hernandez retained Moya as an expert to review the facts of the April 2000 incident, express opinions about the use of force, whether Benard used excessive force by striking Hernandez with an asp, and whether Benard's actions were in compliance with the

applicable SOPs.  See Plaintiff's Initial Rule 26 Disclosures.

Moya possesses a Bachelor of Science degree in Criminology. See Resume of Maurice Moya at 1.  Moya was a certified law enforcement officer with the Albuquerque Police Department for twenty-two years. See id.  Moya's resume indicates that he has been recognized as an expert in the following areas: (i) crime reconstruction; (ii) child abuse (i.e., physical, sexual, pedophilia, custodial interference); (iii) accident reconstruction; and (iv) security and policy procedure of liquor and convenient store establishments. See id.  Moya has not been qualified as an expert to give testimony on excessive force in a Fourth Amendment civil case. See Deposition of Maurice Moya at 52:7-14 (taken June 26, 2003).  Moya testified at his Daubert hearing, however, that on one occasion, the Albuquerque Police Officers Association retained him as an expert on the use of force.

Moya's resume does not discuss training or experience relative to use of force or excessive force.  See Moya Resume.  Moya testified at his deposition that the only training he received above and beyond his basic training to become a certified law enforcement officer and maintain his certification was training regarding accident reconstruction and street survival, such as felony stops and building searches.  See Moya Depo. at 32:22 to 33:15; id. at 35:9-25.  Finally, Moya testified that use of force was not an area of concentration, and he never instructed officers on the use of an ASP.  See id. at 48:10-15; id. at 49:13-16.

On the other hand, Moya, during his career with APD, was a law enforcement instructor for 12 years.  See id. at 34:16-20.  Although not a primary instructor, he was qualified to fill in for other instructors and train APD officers in the use of an asp so as to be in compliance with APD's operating procedures.  See id. at 46:10 to 47:16.  The classes he typically taught, however, involved accident reconstruction, felony investigation, felony preparation, crimes against children, the "Police Science

Program," and standard operating procedures. See id. at 39:14-16; id. at 40:2-3; id. at 40:25 to 41:22. Moya states that he taught use of force in some capacity, but he was never a "primary instructor in a use-of-force training course." Id. at 45:18-22. Rather, he would teach such courses off lesson plans that the primary instructor created when the primary instructors were unavailable. See id. Moya disagreed, however, with defense counsel's characterization that use of force was not one of Moya's areas of expertise. See id. at 48:16 to 49:3.

Moya has formulated, drafted, or otherwise been involved in the formulation or drafting of SOPs for the City of Albuquerque. See id. at 42:3-8. Moya was a member of APD's review board, which addressed, formulated, and/or changed APD's SOPs. See id. at 42:13-24. He was a member when the board addressed the SOPs that relate to use of force. See id. at 42:25-43:11.

Hernandez retained Moya to provide testimony concerning whether Benard used excessive force by striking Hernandez with an ASP, as well as the proper measure of force in such circumstances. See Plaintiff's Initial Rule 26 Disclosures at 8. For this case, Moya reviewed the following information regarding the facts of this case: 14 individual police reports; the APD investigation into Benard's conduct; police photographs from the scene; a transcript of the Grand Jury Presentment; interoffice memoranda; police action cards; and 18 separate interviews. See Rule 26 Report of Maurice Moya at 1-2. Moya further reviewed Hernandez' deposition, the deposition of at least one civilian eyewitness, the depositions of numerous police officers, and Joseph Ferrera's Rule 26 Report.

In his rule 26 disclosures, Hernandez stated the following:

Mr. Moya is an expert on police procedures and wound analysis and excessive use of force, and it is anticipated that he will testify that the injuries to Plaintiff Robert Hernandez are consistent with his statements and, in addition, that the Albuquerque

>Police Department in the present cause of action used excessive force against the Plaintiff.

Plaintiff's Initial Rule 26 Disclosures at 8. In his motion in limine, Benard raises a number of alleged problems with Moya's proposed testimony. As the Court approached the <u>Daubert</u> hearing, it expected Moya to be testifying about a number of topics. At the <u>Daubert</u> hearing, however, Hernandez narrowed considerably the scope of Moya' proposed testimony and said that he would only be offered on the issue of the SOPs. <u>See</u> Transcript of <u>Daubert</u> Hearing at 125:12 to 126:4 (December 29, 2003).[1] The Court thus need not address many of the objections to Moya's testimony.

On December 29, 2003, the Court held a <u>Daubert</u> hearing on Moya's proposed testimony. In addition to hearing the arguments of counsel, the Court heard Moya's testimony and his cross-examination. <u>See</u> Clerk's Minutes at 3 (filed December 29, 2003)[Doc. 257]. Moya testified for approximately 45 minutes, and counsels' arguments lasted approximately one hour and 15 minutes. <u>See</u> <u>id.</u> at 3-4.

## **LEGAL ANALYSIS**

Because Hernandez is offering Moya for much less than what he had indicated in his rule 26 disclosures, at his deposition, and in his briefing, the issues that the Court must decide are reduced. But as this Court explained in a fuller opinion in <u>Taylor v. Hudson</u>, No. Civ. 02-775 JB/RHS, Memorandum Opinion and Order at 11 (D.N.M., filed November 21, 2003), evidence regarding less intrusive alternatives is not relevant to the issues in this Fourth Amendment excessive force case. Because that appears, in one way or another, all that Moya now intends to testify about, the Court will exclude his testimony.

---

[1] The Court's citations to the <u>Daubert</u> hearing transcript refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

**I.   ALL PROPOSED EXPERT TESTIMONY MUST SATISFY THE CONDITIONS OF THE RULES OF EVIDENCE AS THE SUPREME COURT HAS EXPRESSED THEM IN <u>DAUBERT</u> AND <u>KUMHO TIRE</u> TO ENSURE THAT THE EXPERT'S TESTIMONY IS BOTH RELEVANT AND RELIABLE.**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As discussed in <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993), and as refined in <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), the purpose of rule 702 is to ensure that all expert testimony is both relevant and reliable. Thus, the Court must perform a "gatekeeping inquiry . . . tied to the facts of a particular case" to determine if the proposed expert testimony is properly admitted. <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. at 150 (internal quotation marks and citation omitted). <u>See</u> <u>Smith v. Ingersoll-Rand Co.</u>, 214 F.3d 1235, 1243 (10th Cir. 2000)("[T]he gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable.")(citing <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. at 141-42.).

The Supreme Court significantly clarified the scope of <u>Daubert v. Merrell Dow Pharms., Inc.</u> in <u>Kumho Tire</u>, holding the district court's rule 702 gatekeeping duties apply to all expert testimony, whether the expert bases his or her testimony on scientific, technical, or other specialized knowledge. <u>See</u> <u>Smith v. Ingersoll-Rand Co.</u>, 214 F.3d at 1243. The purpose of the <u>Daubert</u> gatekeeping function is not to measure every expert by an inflexible set of criteria, but to undertake whatever

-5-

inquiry is necessary to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well reasoned, and not speculative before he or she admits the evidence. See Fed. R. Evid. 702, Advisory Committee Notes (2000 Amend.).

First and foremost, to determine whether Moya may testify at trial, the Court must determine whether he is competent to testify as an expert. See City of Chanute v. Williams Natural Gas Co., 743 F. Supp. 1437, 1444 (D. Kan. 1990). Additionally, to be reliable under Daubert, the expert must derive his or her inference or assertion by a proper method and must support his or her opinion by appropriate validation -- i.e., good grounds, based on what is known. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 590. Hernandez must show that "the method employed by [Moya] in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003)(citation omitted).

While expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation, . . . absolute certainty is not required." Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003)(quoting Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995)). Hernandez need not prove that Moya is undisputably correct or that his conclusions/opinions are generally accepted. See Mitchell v. Gencorp, Inc., 165 F.3d 778, 781 (10th Cir. 1999). Instead, Hernandez need only show that the method which Moya used in reaching his conclusion is sound and that the opinions are based on facts

which satisfy rule 702's reliability requirements. See id.

## II. MOYA'S PROPOSED TESTIMONY FAILS TO SATISFY DAUBERT AND KUMHO TIRE'S REQUIREMENTS.

In his response to Benard's motion in limine, Hernandez argued that Moya concluded that Hernandez' head wound was consistent with an asp blow. See Plaintiff's Response to Defendant Tom Benard's Motion in Limine to Exclude the Testimony of Maurice Moya at 6 (filed December 29, 2003)[Doc. 255]. At the Daubert hearing, however, Hernandez stated that would no longer be Moya's testimony. See Transcript of Daubert Hearing at 125:12 to 126:4. He stated that Moya would only testify about the SOPs. See id. Hernandez admits that testimony regarding how the wound occurred is beyond Moya's expertise. See id. After Hernandez narrowed the scope of Moya's proposed testimony, he did not establish that the limited testimony was relevant to the inquiry before the jury. He also did not establish that the proposed expert testimony was reliable. Accordingly, the Court will not admit Moya's testimony as evidence during the trial on the merits.

### A. MOYA'S PROPOSED TESTIMONY IS NOT RELEVANT.

In Taylor v. Hudson, this Court, in another excessive force case against Albuquerque police officers, stated:

> It is true that courts have consistently held that a violation of an SOP is not equivalent to a constitutional violation. Likewise, courts have cautioned that such a procedural violation cannot serve as the basis for constitutional liability. These decisions do not unequivocally preclude the introduction of SOP evidence in excessive force cases. The Court believes that a limiting instruction may be an adequate cure for the possible prejudice or confusion associated with these rules. The Defendants are correct, however, that "the reasonableness standard does not require that officers use 'alternative less intrusive means.'" Medina v. Cram, 252 F.3d at 1133 (quoting Illinois v. Lafayette, 462 U.S. 640, 647-648 (1983)(internal quotation marks omitted)). The Tenth Circuit has cautioned that to consider officers' failure to use such less intrusive means "'would be evaluating the officers' conduct from the 20/20 perspective of hindsight rather than from the perspective of an officer making split-

> second judgments on the scene." Medina v. Cram, 252 F.3d at 1133.
>
> Accordingly, the Court will exclude any SOP evidence related to less intrusive alternatives to the amount of force used against Taylor. Such evidence is irrelevant to the Fourth Amendment inquiry. . . . To the extent that such SOPs address less intrusive alternatives, they are inadmissible.

Memorandum Opinion and Order at 11-12 (footnote omitted). While Hernandez and Moya do not specify which SOPs they intend to discuss, it would seem likely that some of the SOPs might fall within this proscription. To the extent that they do, the Court will exclude such expert testimony.

In Taylor v. Hudson, however, the Court indicated that other SOPs might be relevant in an excessive force case. In Kampa v. City of Albuquerque, Civ. No. 96-1572 LFG/DJS, Order on Motions in Limine (D.N.M., filed March 9, 1998)[Doc. 138], the Honorable Lorenzo Garcia, United States Magistrate Judge, articulated the important point that, while "violation of police procedure in and of itself is not constitutionally significant . . . . such procedures are relevant to determining whether use of force is objectively reasonable." Id. at 4. Judge Garcia relied on a decision from the United States Court of Appeals for the Ninth Circuit in determining whether to admit the SOPs at issue.

In Scott v. Henrich, 39 F.3d 912 (9th Cir. 1994), the Ninth Circuit considered the admissibility of SOPs in the context of evaluating the objective reasonableness of the defendants' actions. The Ninth Circuit assumed, without deciding, that internal police guidelines are potentially relevant to determining whether use of force is objectively reasonable. The Scott court went on to state that they are relevant only when one of their purposes is to protect the individual against whom force is used. See id. at 915-16.

> Thus, if a police department limits the use of chokeholds to protect suspects from being fatally injured, . . . or restricts the use of deadly force to protect suspects from

-8-

>being shot unnecessarily, . . . such regulations are germane to the reasonableness inquiry in an excessive force claim. But if, for example, the department bans high-speed chases in order to save gas, or to protect bystanders, a suspect arrested after an unauthorized chase can't complain about the violation of a rule not intended for his benefit.

Id. at 916 (internal citations omitted). In both Scott and Kampa, the courts excluded the evidence after finding that the relevant SOPs were not intended for the plaintiffs' benefit or protection.

The case law does not create a blanket prohibition against the admissibility of police SOPs in excessive force cases. It does, however, demonstrate a very strong tendency to exclude such evidence on the basis of irrelevancy. This tendency stems from the primary focus of the Fourth Amendment inquiry: whether the officer acted reasonably under the circumstances. There may be situations in which admissibility would be appropriate, such as those described in Scott v. Henrich and Kampa v. City of Albuquerque.

Thus, evidence related to the appropriateness of the amount of force is different from evidence that addresses less intrusive alternatives. The evidence of the amount of force would, of course, need to be unrelated to less intrusive alternatives. Hernandez would then face the additional burden of establishing that the SOP in question was designed or adopted for the benefit and protection of persons like himself. See, e.g., Scott v. Henrich, 39 F.3d at 915-16; Kampa v. City of Albuquerque, Civ. No. 96-1572 LFG/DJS, Order on Motions in Limine at 5. Even if both of these requirements were met, there is precedent to suggest that the evidence should still be excluded as irrelevant.

In Marquez v. City of Albuquerque, the Honorable William Deaton, United States Magistrate Judge, excluded SOP evidence related to the appropriateness of the use of a police service dog in apprehending a fleeing suspect. Such evidence would have gone to the reasonableness of the actual amount of force used. Judge Deaton found it to be irrelevant because "the fact that [the defendant's]

conduct may not have conformed with police regulations or operating procedures does not operate to create constitutional liability under Section 1983." Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, Memorandum Opinion and Order at 2 (D.N.M., filed Sept. 24, 2002)[Doc. 148]. Two other New Mexico District Court opinions reached the same conclusion under similar circumstances. See L'Eperance v. Mings, Civ. No. 02-258 MCA/RLP, Memorandum Opinion and Order at 3 (D.N.M., filed July 11, 2003)[Doc. 132](concluding that SOP evidence was not relevant in light of rule of law that violation of such procedures is insufficient to establish liability under § 1983); Tanberg v. Sholtis, Civ. No. 02-0348 LCS/LFG, Order on Motions in Limine at 7 (D.N.M., filed June 6, 2003)(same).

While this Court has been more liberal than most in admitting evidence of SOPs, the proponent must still establish that the SOP meets the standards of Scott v. Henrich and does not get into the area of less intrusive alternatives. Despite initial rule 26 disclosures, an expert report, a deposition of Moya, a Daubert hearing, an oral argument, and extensive briefing on the issue, Hernandez did not present a specific SOP for review. Accordingly, the Court cannot find that his testimony is relevant to the Fourth Amendment inquiry in this case without reviewing it. The Court cannot determine if the SOPs about which Moya intends to testify relate to less intrusive means, or were designed or adopted for the benefit and protection of persons like Hernandez. The Court thus cannot consider the appropriateness of such evidence. The presumption is that such evidence is not admissible.

To the extent that the Court can glean from Moya's report and testimony what he will say, it does appear that he will be testifying about less intrusive alternatives. For example, he talks about the "continuum of force." Transcript of Daubert Hearing at 133:25 to 135:2. He says that other

alternatives could have been used before resorting to use of the asp. See id. at 135:18 to 136:10; id. at 136:19 to 137:5. Moya states that Benard could have used his hands; that he could have used the asp in a different way; and that different things could have been done. See id. Given that this Court indicated in Taylor v. Hudson that SOPs related to these topics are not relevant to the issues in a Fourth Amendment excessive force case, the Court will not allow such testimony in this case.

There is another reason that the Court will exclude Moya's testimony on the SOPs. Even when the Court can determine the proposed testimony's relevance, the SOP evidence on excessive force creates rule 403 issues, because it may present the danger of juror confusion that substantially outweighs its probative value. Jurors may confuse the difference between a constitutional violation and a violation of police SOPs. Allowing this confusion to exist may be unnecessary, because the only standard upon which a jury can find liability is stated in Graham v. Connor, 490 U.S. 386 (1989).

Prior cases have recognized this danger. See, e.g., L'Esperance v. Mings, Civ. No. 02-258 MCA/RLP, Memorandum Opinion and Order at 3; Tanberg v. Sholtis, Civ. No. 02-0348 LCS/LFG, Order on Motions in Limine at 7-8; Marquez v. City of Albuquerque, Civ. No. 01-445 WWD/LFG, Memorandum Opinion and Order at 3. The jury's misunderstanding may be magnified if Hernandez argues at trial that Benard's use of force was unreasonable because he failed to follow standard police procedures. In light of the relatively low probative value of such evidence, this Court indicated in Taylor v. Hudson that it may follow prior decisions of this district and find that, even if relevant, SOPs should be excluded on the basis of undue jury confusion, a tendency to mislead the jury, and undue prejudice. Again, because Hernandez did not make possible a review of the specific SOPs that Hernandez seeks to introduce, the Court will exclude Moya's testimony on the SOPs.

Hernandez bore the burden of establishing that his expert evidence was relevant to the inquiry before the Court. Hernandez has not met his burden. The Court will thus exclude Moya's proposed testimony regarding SOPs.

**B.   SOME OF MOYA'S PROPOSED TESTIMONY DOES NOT MEET THE REQUIREMENTS OF <u>DAUBERT</u> AND <u>KUMHO TIRE</u> BECAUSE HE IS NOT QUALIFIED TO RENDER THOSE OPINIONS.**

Rule 702 provides that a witness may be qualified as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Hernandez urges that, on the basis of Moya's experience, and the knowledge and training that Moya gained while he held his position with APD, the Court should allow him to testify as an expert witness on the use of force and whether Benard's action was in compliance with APD's SOPs. See <u>Dorsett v. American Isuzu Motors, Inc.</u>, 805 F. Supp. 1212, 1225 (E.D. Pa. 1992)(qualifying witness as an expert and allowing witness to explain policy since witness had previously made policy). Hernandez argues that, because Moya will be within the confines of his subject area in expressing his opinions on the use of force and whether Benard complied with APD's SOPs at the time at issue, the Court should allow his expert testimony. <u>See</u> also <u>Compton v. Subaru of America, Inc.</u>, 82 F.3d 1513, 1520 (10th Cir. 1996)(holding that "[a]s long as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight.'")(quoting <u>Wheeler v. John Deere, Co.</u>, 935 F.2d 1090, 1100 (10th Cir. 1991). Hernandez contends that the fact that Benard does not agree with Moya's conclusion is immaterial, because on cross examination, Benard will have the opportunity to ferret out the opinion's alleged weaknesses to ensure the jury properly evaluates the testimony's weight and credibility. See <u>Goebel v. Denver & Rio Grande Western R.R. Co.</u>, 346 F.3d 987, 994 (10th Cir. 2003)("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")(quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 596).

In contrast, Benard argues that Moya's resume and deposition testimony highlight his lack of training and inexperience concerning use of force. His twenty-two years as a law enforcement officer do not automatically transform him into a use-of-force expert. That Moya was a certified police officer does not, without more, provide an adequate basis for him to testify regarding the use of force.

There are questions about Moya's expertise on the use of the asp. There is evidence that Moya taught classes on use of force, and that may show he possesses the necessary training and experience concerning the proper and/or allowable use of force, as well as APD's SOPs. See Moya Depo. at 44:5 to 45:22; id. at 48:10-12. It does not appear, however, that Moya ever taught a course specifically dealing with the asp. See id. at 49:13-16. Although Moya received training on the use of an asp, he did not like carrying one and never used it to strike a person outside of training. See id. at 36:16 to 38:9; Transcript of Daubert Hearing at 145:23 to 146:3. Moya has, however, seen other officers strike civilians with asps. See Transcript of Daubert Hearing 146:4-6. He received some training as an officer fairly late in his career about the asp. See id. at 139:2-5.

It is Hernandez' obligation to establish that Moya is qualified to testify about use of an asp, and he has not done so. The Court cannot conclude that Moya is qualified to provide evidence about the use of an asp. The Court will therefore exclude his testimony on the use of an asp.

If Moya cannot testify about the use of an asp, there is a question what he can testify about. Any other testimony about use of force would most likely be about less intrusive alternatives. As the

Court has already indicated in its discussion of SOPs, however, the Tenth Circuit has indicated that evidence of less intrusive alternatives is irrelevant.  Because that is what Moya apparently wants to testify about, the Court will not admit that evidence.

**IT IS THEREFORE ORDERED** that Defendant Tom Benard's Motion in Limine to Exclude the Testimony of Maurice Moya; or in the Alternative, Motion for a Daubert Hearing is granted.  The court held a <u>Daubert</u> hearing on December 29, 2003.  The Court will exclude Moya's testimony.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Anthony J. Ayala
Albuquerque, New Mexico

    Attorney for the Plaintiff


Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

    Attorneys for the Defendant Tom Benard


Stephanie Griffin
Assistant City Attorney
Albuquerque, New Mexico

    Attorney for the Defendant City of Albuquerque