IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

    Plaintiff,

vs.                                                                                                                      No. CIV 02-0333  JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Exclude the Rule 26 Expert Report and Proposed Testimony of Joseph Ferrera; or in the Alternative for a Daubert Hearing, filed June 17, 2003 (Doc. 139); and Plaintiff's Motion to Exclude Opinion Testimony of Joseph Ferrera and Quash Daubert Hearing, filed December 11, 2003 (Doc. 243).  At a Daubert hearing on December 29, 2003, the Court heard arguments from counsel and testimony from Mr. Ferrera.  The primary issues are whether the Court should allow Mr. Ferrera to testify as an expert in the trial of this matter on the following five topics: (i) certain medical assertions that he makes in his rule 26 expert report; (ii) possible alternative causes of Hernandez' head wound; (iii) standard police procedures; (iv) the perceptual effects of stressful situations on police officers; and (v) whether the wound Hernandez suffered was consistent with an asp blow.  Because the Court finds that Mr. Ferrera is qualified to give some of the opinions he offers and that those opinions are both relevant and reliable, it will grant the motions in part and deny the motions in part.

### BACKGROUND

The Defendant, Tom Benard ("Benard"), retained Ferrera as an expert to express opinions

regarding Benard's use of force on Hernandez. Ferrera is a police officer with the City of South Field, Michigan. See Transcript of Daubert Hearing at 21:9-11 (December 29, 2003)("Transcript").[1] He has worked in law enforcement for approximately 26 years, first with the Federal Reserve Bank as a federal protection officer for two years, then as a deputy with the Oakland County Sheriff's Department in Michigan for six years. See id. at 21:12-19. Ferrera has spent the last eighteen years with the City of South Field as a police officer. See id. Ferrera has not attended medical school and is not a medical doctor. See id. at 59:13-15. As of March 2003, Ferrera has received basic first aid instruction and training. See id. at 59:25 to 60:3.

On May 7, 2003, Benard provided Hernandez with Ferrera's rule 26 report and resume. On June 17, 2003, after reviewing the report, Hernandez filed his motion to exclude Ferrera's rule 26 report and proposed testimony, or in the alternative, for a hearing on the admissibility of Ferrera's expert report and proposed testimony. The Court held a Daubert hearing on December 29, 2003.

While Ferrera's rule 26 expert report contains a number of opinions, at oral argument, defense counsel identified three specific areas in which Benard is offering expert testimony. See Transcript at 12:14 to 13:11. The Court has previously excluded all testimony by Ferrera on medical issues and possible alternative causes of Hernandez' head wound. See Memorandum Opinion and Order, filed December 24, 2003 (Doc. 249). Benard now seeks to introduce Ferrera's testimony with respect to: (i) generally accepted police procedures and the reasonableness of Benard's conduct in light of those established procedures; (ii) the effects of stressful situations on the perceptions of police officers; and (iii) whether Hernandez' head wound is consistent with a full force asp strike. See

---

[1] The Court's citations to the Daubert hearing transcript refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

Transcript at 12:14 to 13:11; id. at 14:19 to 15:6.

It is important not to misconstrue Ferrera's expert report. Ferrera notes that "[r]egarding the question of whether or not Officer Benard struck Mr. Hernandez in the head with his ASP, I cannot give a definitive answer." Joseph Ferrera's Report at 2. Ferrera did conclude, however, that "[t]he use of a normal ASP strike to the head would certainly result in much more significant injuries to Mr. Hernandez . . . ." Id. at 4. Plaintiff's proffered expert on police procedures also supports the conclusion that a full force asp strike did not cause Hernandez' head injury. See Deposition of Maurice Moya at 144:6 to 145:21 (taken June 26, 2003). Also, Ferrera noted that "striking Mr. Hernandez in the lower legs with his ASP in these circumstances was an appropriate use of force and within accepted procedures for a law enforcement officer." Ferrera's Report at 2. Finally, Ferrera also discusses four alternative causes for Hernandez' head wound: (i) an injury from the vehicle itself, along with delayed bleeding; (ii) contact with Officer Elrick's handgun; (iii) contact with gear from other officers; and (iv) a less forceful than normal ASP strike by Benard.

## DAUBERT STANDARD

The Daubert line of decisions requires the Court to determine whether Ferrera is proposing to testify to (i) scientific or other specialized knowledge that (ii) will assist the trier of fact to understand or determine a fact in issue. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993). This determination entails a preliminary assessment whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. See id. at 592-593. Before allowing Ferrera to testify, the Court must be satisfied that his testimony is not only relevant, but reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

The Supreme Court has directed that, "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" Id. at 149 (quoting Daubert, 509 U.S. at 592). To be reliable under Daubert, an expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science," based on actual knowledge, not "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 590. The proponent of the evidence must also show that the expert's opinion is sufficiently tied to the facts of the case to satisfy rule 702's relevancy requirements. See Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999).

Recently, the United States Court of Appeals for the Tenth Circuit applied the Daubert and Kumho Tire tests in Dodge v. Cotter Corp., 348 F.3d 1212 (10th Cir. 2003), reiterating the four basic tests for the reliability and admissibility of expert opinion testimony as follows: (i) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (ii) whether the opinion has been subjected to peer review; (iii) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (iv) whether the theory has been accepted in the scientific community. See id. at 1222 (quoting Daubert, 509 U.S. at 593-94). This list is not intended to be an exclusive checklist. See Kumho Tire Co. v. Carmichael, 526 U.S. at 150. To the contrary, district courts applying Daubert have broad discretion "in both deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." United States v. Velarde, 214 F.3d 1204, 1208-1209 (10th Cir. 2000).

The Tenth Circuit, in Dodge v. Cotter, stated that the district court should generally focus on an expert's methodology rather than the conclusions it generates, but noted that an expert's conclusions are not immune from scrutiny. See Dodge v. Cotter, 328 F.3d at 1222. The Dodge v. Cotter opinion quotes with approval language from General Elec. Co. v. Joiner, 522 U.S. 136 (1997), to the effect that a court may conclude that there is simply too great an analytical gap between the data and opinion proffered, and that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Dodge v. Cotter, 328 F.3d at 1222 (quoting General Elec. Co. v. Joiner, 522 U.S. at 146).

> Under Daubert, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology. It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Dodge v. Cotter, 328 F.3d at 1222-1223 (internal quotation marks and citations omitted).

## LEGAL ANALYSIS

### I. SOME PORTIONS OF FERRERA'S PROPOSED EXPERT TESTIMONY SATISFY THE DAUBERT INQUIRY.

Hernandez does not argue that Ferrera's proposed expert testimony is not relevant to the issues in this case. The Court will thus not address the first prong of the Daubert analysis. As a general issue, the manner in which Hernandez sustained his alleged injuries is relevant to his claims of misconduct by Benard. While some of Ferrera's testimony should not be admitted, and the Court

will grant Hernandez' motions in part, there are other portions of testimony that the Court will admit.

### A. THE COURT WILL ALLOW FERRERA TO TESTIFY ABOUT THE REASONABLENESS OF BENARD STRIKING HERNANDEZ IN THE LEGS.

Ferrera opines that, assuming Benard's version of events, striking Hernandez in the lower legs with his asp in these circumstances was an appropriate use of force and within accepted procedures for a law enforcement officer. Hernandez does not argue that Ferrera is not qualified as an expert in police procedures. This opinion requires specialized training and experienced that Ferrera possesses. This opinion can assist the jury in integrating factual findings and reaching ultimate opinions in this case. See Fed. R. Evid. 702. Accordingly, the Court will allow Ferrera to testify regarding the reasonableness of the strikes to Hernandez' legs.

### B. THE COURT WILL ALLOW FERRERA TO TESTIFY THAT A FULL FORCE ASP STRIKE COULD NOT HAVE CAUSED HERNANDEZ' HEAD WOUND.

Ferrera opines that a full force asp strike could not have caused Hernandez' head wound. There is no dispute about this assertion. The Plaintiff's expert, Maurice Moya, agrees. See Moya Depo. at 144:6 to 145:21 (concluding that a full force asp strike could not have occurred). This opinion requires specialized training and/or experience that Ferrera possesses. See Transcript at 45:17 to 46:21. Ferrera testified that he has personally handled an asp similar to the one Benard used in this case and has witnessed full force strikes with an asp. See id. Based on his experience, training, and personal handling of asps, Ferrera has reached an opinion that it is more probable than not that Hernandez' head wound did not result from a full force asp strike. See id. This opinion or fact can assist the jury in integrating factual findings and reaching ultimate opinions in this case. See Fed. R. Evid. 702. Accordingly, the Court will allow Ferrera to testify regarding the unlikelihood that a full

force asp strike caused Hernandez' head wound.

## II. THE COURT WILL NOT ALLOW FERRERA TO TESTIFY REGARDING GENERAL POLICE PROCEDURES AND TECHNIQUES OR THE EFFECTS OF STRESSFUL SITUATIONS ON POLICE OFFICERS.

Benard proposes to call Ferrera to testify on the issues of general police techniques and procedures. Based on the testimony Ferrera gave at the Daubert hearing, however, the Court is not convinced that this testimony would be relevant or helpful to the jury. Ferrera testified in some detail about the various procedures and techniques that Officer Elrick used to take Hernandez down to the ground. See Transcript at 33:12 to 35:13. The key factual issues for the jury's determination in this case are whether Hernandez was resisting arrest, whether Benard struck Hernandez with the asp, and whether Hernandez was handcuffed at that time. The Court does not believe that an expert's recitation of Elrick's actions would be helpful to a jury in determining whether Benard's use of force on Hernandez was reasonable. Accordingly, the Court will exclude Ferrera's testimony regarding police techniques and procedures.

Benard also stated that he intends to call Ferrera to testify regarding the perceptual effects of stressful situations on police officers. The Court has the same concerns about this testimony that it has about technique and procedure testimony. Ferrera gave testimony at the Daubert hearing about tunnel vision, decreased cognitive functioning, and deteriorating motor skills. See id. at 35:24 to 36:2. Ferrera was unable, however, to give specific testimony establishing that Benard suffered from these effects and how they might have influenced his interaction with Hernandez.

In addition, the Court is not convinced that Ferrera is qualified to give this type of testimony. His knowledge of these perceptual effects is largely based on books and articles that he has read. See id. at 37:6 to 39:15; id. at 40:17 to 43:11. The fact that Ferrera may be well-read on these topics

does not necessarily qualify him as an expert to testify about them. Such testimony also may not be helpful to the jury. Benard is free to introduce testimony through his witnesses to establish that this was a stressful situation. Accordingly, the Court will not allow Ferrera to testify regarding the perceptual effects of stressful situations on police officers.

### III.     THE COURT HAS ALREADY STATED THAT FERRERA CANNOT TESTIFY ABOUT POSSIBLE ALTERNATIVE CAUSES.

Based upon a review of the investigative evidence and photographs, Ferrera discusses four alternative sources which could have caused Hernandez' heard injury. Ferrera contends that these four possibilities help provide the basis of his ultimate opinions. While the Court will allow Ferrera to testify that it is highly unlikely that a full force asp strike to the head caused Hernandez' injuries, the Court will not allow him to testify about the possible alternative causes. These opinions are speculation and are not opinions or inferences that the Federal Rules of Evidence permit.

Hernandez argues that Ferrera has done insufficient research to support his conclusion that Hernandez' head injury more likely than not occurred before the time Benard allegedly struck him with the asp. Hernandez maintains that Ferrera's conclusion that Hernandez' injuries may not have occurred as alleged in the Complaint is speculation and is not based on an identified methodology, rendering the report and any testimony unreliable.

The Court agrees that Ferrera is speculating on other sources that may have been the cause of Hernandez' injury. Ferrera does not provide a sufficient basis for these opinions or explain how he reliably applied his experience to the facts. If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience provides a sufficient basis for the opinion, and how that experience is reliably applied

to the facts. The Court is reluctant to allow an expert to come in at trial, speculate about a number of possibilities, not really provide probabilities, and try to give the impression that it could not have been the asp. Ferrera's alternative theories of how Hernandez may have been injured are subjective and based on speculation. The Court will exclude his opinions on alternative theories.

### A. THE COURT HAS ALREADY STATED THAT FERRERA CANNOT TESTIFY ABOUT THE MEDICAL ASSERTIONS NEEDED TO DISCUSS DELAYED BLEEDING.

With respect to delayed bleeding, Ferrera noted that, "[a]s a police trainer, [he] learned that in life threatening situations our brain stops functioning under the Parasympathetic Nervous System (P.N.S.) and begins to function under the Sympathetic Nervous System (S.N.S.)," which causes vascular flow to redirect "away from extremities and to muscle groups and functions that will help keep us alive in a high stress situation." Ferrera Report at 2. Ferrera opines that this S.N.S. functioning can cause a delay in bleeding. Once the person calms down and the stress of the situation is reduced, "the S.N.S. would deactivate and the P.N.S. reactivate," causing "increased bleeding." Id. at 3. This reactivation of the P.N.S. "would account for all the blood in the photos of Mr. Hernandez when he is on the ground." Id.

Ferrera states that his opinion is based upon training procedures and manuals provided by PPCT Management Systems, Inc. See Affidavit of Joseph Ferrera ¶¶8-10, at 2 (executed July 9, 2003). The materials address the Human Factors associated with High Stress or life threatening situations, which police officers routinely encounter. See id. PPCT Management Systems, Inc., is an internationally recognized use of force training facility, and criminal justice agencies, including state police departments and federal law enforcement agencies, rely upon PPCT's procedures and manuals. See id.

While Hernandez' motion discusses generally the unreliability of Ferrera's expert opinion, it focuses greatly on his conclusions regarding delayed bleeding, contending that: (i) he lacks the education necessary to make such determinations; (ii) he has conducted inadequate research; and (iii) his opinion is based on police department bias.  While Benard insists that Ferrera is not offering a medical opinion, Hernandez correctly characterizes this portion of Ferrera's report as medical testimony and that Ferrera is relying on medical principles.  Regardless how he is offering these opinions or where he got his information, Ferrera is not qualified as an expert by knowledge, skill, training, or education to offer opinion testimony concerning the function of the P.N.S. and the S.N.S.

Benard says that Ferrera did not, and does not intend to, offer testimony discussing the medical functions or causes of certain medical phenomena in the human body beyond his expertise and training.  Benard contends that Ferrera's expert report offers testimony limited to his field of expertise as a Use-of-Force instructor, based on his observations and training.  But Benard has not persuaded the Court that there is even a narrow area of medical functions or causes of certain medical phenomena in the human body about which Ferrera is qualified to testify.  Therefore, the Court will not admit Ferrera's report and any proposed testimony regarding delayed bleeding.  Assuming, without deciding, whether Ferrera's opinion about delayed bleeding is relevant, the Court finds that his opinion on delayed bleeding is not properly based upon his training and experience in high stress police situations involving use of force.  The Court will grant this portion of Hernandez' motion to exclude.

It would not be reasonable to require Hernandez to defend against the medical opinion of an expert who does not have more than basic first-aid training.  Ferrera is not an expert in the area of medical principles, and the Court will preclude his opinions that rest on medical principles,

-10-

conclusions or opinions. It is noteworthy that the Plaintiff's expert, Dr. Watts, also lacks medical training, but offers medical opinions regarding skin strength and blood splatter. For reasons similar to those set forth here, the Court has precluded Watts from testifying about skin strength and blood splatter.

Benard suggests that a limiting instruction to the trier of fact is appropriate to ensure that the jury does not consider Ferrera's discussion of delayed bleeding as medical evidence or conclusions, but as testimony based on training and experience of an expert in police procedures and the use of force. But the Court has already found that the delayed bleeding theory is based on medical principles. Thus, the Court will not instruct the jury as Benard requests.

Apparently fearing that the Court will exclude all of Ferrera' report or proposed testimony, Benard asks that the Court only limit the opinions as needed. Benard asks the Court not to exclude the report and testimony in its entirety. Benard argues that, to the extent that this Court finds any testimony that Ferrera offers is beyond the scope of his training and experience, the Court should limit that testimony as it so determines. That is an appropriate request. The proffered expert report and proposed testimony concerning the function of the P.N.S. and of the S.N.S. does not satisfy Daubert's reliability test. The Court will not admit Ferrera's proposed testimony on delayed bleeding. The Court will exclude all portions of Ferrera's report and/or testimony that provide medical conclusions, but admit other portions consistent with this opinion.

### B. THE COURT WILL NOT ALLOW FERRERA TO SPECULATE ABOUT OFFICER ELRICK'S HANDGUN.

Ferrera's second basis for his opinions regarding how Hernandez sustained his alleged injuries is by "blunt trauma" from Officer Elrick's handgun. See Ferrera Report at 3. Ferrera, reviewing

Elrick's report and other investigative material, indicates the following:

> [Officer Elrick] presented his pistol and ordered the suspect to the ground . . . . When he failed to comply he was taken to the ground (arm bar) by [Elrick] and several other officers. The arm bar technique requires two hands. Officer Elrick would have had to use his hand with the gun in it to force Mr. Hernandez to the ground. The muzzle end of the gun or slide/frame, or the magazine base plate could have caused blunt force trauma at the beginning of the takedown or as they made contact with the ground . . . . The pistol should have been checked for evidence of contact with Mr. Hernandez, however, I do not believe this was done. Further Officer Elrick states in his report that his belt tape recorder was damaged during the struggle with the offender. The recorder itself might be involved in the injury to Mr. Hernandez.

Id. (internal quotations omitted). The key is that Ferrera is stating that it is more likely than not that the injury was caused by a means other than a full force asp blow, not that any one alternative is more likely than not.

Hernandez does not dispute that Ferrera has adequate training and experience to be qualified as an expert in relation to police procedures and use of force. Ferrera is familiar with the arm bar technique, how it is performed, and the force it requires to execute. See Ferrera Affidavit ¶6, at 2. It is based on this training, experience, and knowledge, as well as a review of the police investigative materials discussing Elrick's description of his use of the arm bar procedure while holding his gun, that led Ferrera to formulate his opinion.

Hernandez has not argued that the evidence relied upon by Ferrera is not normally relied upon to formulate opinions. Ferrera is providing an opinion based upon his knowledge of the arm bar technique, his knowledge of police procedures, and his experience in the field, and applying such knowledge and experience to the facts of this case. See Kumho Tire v. Carmichael, 526 U.S. at 150.

Benard has not, however, demonstrated how his conclusion that Elrick's gun caused Hernandez' head wound is reliable under Daubert's flexible gatekeeping approach. Ferrera is asking

-12-

the Court to take his word for it. Ferrera did not witness the events that are the subject of this matter, but has reviewed investigative materials and photographs. Based on his experience as a law enforcement officer and instructor, he has drawn a conclusion from the evidence he reviewed. Ferrera's conclusion is, in part, reached on the basis that a full force asp strike could not have caused Hernandez' alleged injuries and, therefore, explains the existence of other potential means that could have caused the alleged injuries.

Ferrera is relying solely or primarily on possibilities instead of probabilities, basing these speculations on his experience as a law enforcement officer and instructor. Benard has not established the reliability of the testimony, because the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Thus, the Court will not admit, under the Daubert standard, the expert report and any proposed testimony discussing Elrick's handgun.

### C. THE COURT WILL NOT ALLOW FERRERA'S REPORT AND ANY PROPOSED TESTIMONY ABOUT GEAR FROM OTHER OFFICERS.

Ferrera's third alternative cause of the injury is that "some of the gear on the belts of the officers made violent contact with Mr. Hernandez as he lay on the ground during the struggle to handcuff and then search him." Ferrera Report at 4. Ferrera states: "Officers have a tendency in stressful situations to rush in and drop down on struggling violent suspects . . . . Any rigid rounded object on a duty belt has potential for this wound." Id. Likewise, officers are trained to drop down on struggling suspects to subdue the suspect and to protect the officers. See Ferrera Affidavit ¶7, at 2.

As with Elrick's handgun, Ferrera's conclusion about gear from other officers is based upon

-13-

his training and experience as a police officer and trainer, and his review of the investigation materials and photographs of the incident. The Court has the same problems with reliability that it has with Ferrera's testimony about Elrick's handgun. It is speculative for Ferrera to suggest that a holster, radio holder, baton holder, or some other object might have caused the head wound. Accordingly, the Court does not find Ferrera's report and any proposed testimony about these other objects to be reliable. The Court will thus not admit this evidence under Daubert.

### D. THE COURT WILL NOT ALLOW FERRERA TO TESTIFY THAT A LESS FORCEFUL THAN NORMAL ASP STRIKE BY BENARD COULD HAVE CAUSED THE HEAD WOUND.

Finally, Ferrera concludes that "an ASP strike at less than normal power by Officer Benard could have caused the wound. Sgt. Johnston described Officer Benard's strikes as two normal downward strikes . . . . In the excited state he was in, I cannot think that Officer Benard's strikes would be anything less than normal." Ferrera Report at 4. Benard argues that, if the asp strikes were "normal," such strikes cannot form the basis of an excessive force claim in light of all other facts and circumstances. The Court makes the same finding of unreliability for this testimony as discussed for the other three alternative causes of the head wound. Accordingly, Ferrera's report and any proposed testimony about a less forceful asp blow is not reliable and, under Daubert, will not be admitted.

Except for two narrow issues, Ferrera's expert report does not satisfy Daubert's reliability requirement. The Court will thus not admit all aspects of the report and of the proposed testimony. The Court will grant Hernandez' motion to exclude in part.

### IV. THE COURT WILL EXCLUDE SOME OF FERRERA'S TESTIMONY UNDER RULE 403.

As noted above, Benard has established the relevancy and reliability of some portions of

-14-

Ferrera's expert report and proposed testimony. Hernandez argues that the Court should nonetheless exclude the evidence under rule 403 of the Federal Rules of Evidence, because the danger of unfair prejudice substantially outweighs the probative value of such report and testimony. Hernandez contends that the risk of this testimony is that the jury might substitute Ferrera's opinion in an attempt to explain away Benard's actions.

The function of an expert is to assist the trier of fact in resolving factual disputes. The jury should determine the reasonableness of Benard's actions within the context of all the evidence. While Hernandez accuses Ferrera of making excuses for Benard, a fellow police officer, and for his allegedly unconstitutional and criminal actions, and of placing his stamp of approval on Benard's theory in the guise of an expert opinion, a properly qualified expert can be of assistance to a jury.

The Court does not believe that the portion of the proffered expert report and proposed testimony that satisfies <u>Daubert</u>'s reliability test is unduly prejudicial. Hernandez does not show why this narrow testimony would be prejudicial other than the fact that it would provide evidence to the jury in Benard's defense, contradicting the allegations in the Complaint, and allowing the jury to weigh the evidence in favor of or against Benard or Hernandez. This is the nature of the adversarial system. While the adversarial process is not always a satisfying experience, the defendant is entitled to present evidence in his defense. Hernandez has not presented adequate grounds to exclude relevant evidence on the basis of prejudice.

Once the proponent of an expert meets the threshold requirements of expertise, reliability, relevance, and helpfulness, the Court should generally admit the evidence. It is a difficult for the Court to find that testimony will assist the trier of fact under <u>Daubert</u> because it is both relevant and reliable, and then find the evidence is too prejudicial and will lead to jury confusion. Accordingly,

the Court will not use rule 403 as a basis to exclude the proposed evidence and testimony that it has already found admissible under Daubert.

In contrast, the proposed testimony that the Court has stated it will exclude should also be excluded because it is unfairly prejudicial. The Court is reluctant to allow Ferrera to raise a number of possibilities to give the impression that the injury could not have been caused by the asp. Therefore, the Court will admit two aspects of Ferrera's report and, on those two aspects, deny Hernandez' motion.

**IT IS THEREFORE ORDERED** that the Plaintiff's Motion to Exclude the Rule 26 Expert Report and Proposed Testimony of Joseph Ferrera; or in the Alternative for a Daubert Hearing, filed June 17, 2003 (Doc. 139); and Plaintiff's Motion to Exclude Opinion Testimony of Joseph Ferrera and Quash Daubert Hearing, filed December 11, 2003 (Doc. 243) are granted in part and denied in part. The Court held a Daubert hearing on December 29, 2003 to determine the admissibility of the proffered expert report and the proposed witness testimony. The Court will exclude Ferrera's proffered rule 26 expert report and testimony except as to two areas: (i) whether Benard's act of striking Hernandez in the legs with his asp was a reasonable use of force under the circumstances; and (ii) whether it is likely that Hernandez' head wound could have resulted from a full force asp strike.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Anthony James Ayala
Albuquerque, New Mexico

> *Attorney for the Plaintiff*

Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

> *Attorneys for the Defendant Tom Benard*

Stephanie M. Griffin
Assistant City Attorney
Albuquerque, New Mexico

> *Attorney for the Defendant City of Albuquerque*