IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

    Plaintiff,

vs.                                                                                                    No. CIV 02-0333   JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Plaintiff, Robert Hernandez' Motion in Limine to Exclude Psychological Evaluation Testimony and Medical Treatment Records From Any NM Department of Corrections Facility, filed January 5, 2004 (Doc. 267).  The Court held a hearing on this motion on January 21, 2004.  The primary issue is whether the Court should exclude Dr. Edward Siegel, offered as an expert witness, from testifying regarding his psychological evaluation of Hernandez and whether his written report is admissible.  Both parties indicated at the hearing that they were comfortable with the Court deciding this motion on the briefing and without holding an evidentiary hearing.  Because the Court determines that Siegel's findings are no longer relevant to the remaining causes of action in this case except for impeachment purposes, that those findings are not sufficiently reliable to aid the jury in determining the remaining issues, and that any probative value of Siegel's testimony or report is substantially outweighed by prejudice they would cause against Hernandez, the Court will grant the motion.

**BACKGROUND**

    Defendant Tom Benard retained Siegel to provide expert testimony regarding Hernandez'

alleged psychological injuries.  Hernandez has since withdrawn any claims of psychological injury. Benard asserts that two aspects of Siegel's testing and evaluation are still relevant to Hernandez' credibility and that the report and testimony about the same should be admitted.

It should be emphasized that Hernandez' counsel has done a number of things to reduce prejudice to his client.  For example, he does not intend to call Hernandez at trial or to introduce his statements.  Rather, he intends to rely on other witness' testimony about the event.  Hence, to allow Benard to emphasize Herndanez' veracity or credibility, when he will not even testify in his case in chief, is highly prejudicial without being helpful to the jury.

First, Siegel performed a neuropsychological evaluation of Hernandez.  As part of that evaluation, Siegel administered a Test of Memory Malingering ("TOMM").  The TOMM is a test that psychologists use to assess whether a patient is malingering.  See Affidavit of Edward M. Siegel, Ph.D. ¶ 6, at 2 (executed January 16, 2004). "'The essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs.'" Id. ¶ 9, at 3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 739 (4th ed. Text Revision 2000)(commonly referred to as DSM-IV-TR)).  Siegel's report and accompanying affidavit conclude that Hernandez' scores on the TOMM are definitive evidence of malingering.

Siegel's Supplemental Affidavit notes that the neuropyschological community views  the TOMM as a reliable and useful test, that the test is subjected to extensive peer review, and that the neuropsychological community widely accepted and used the test to assess a patient's true bona fide memory impairments.  See Supplemental Affidavit of Edward M. Siegel, Ph.D. ¶ 3, at 1 (executed

January 20, 2004).

The second aspect of Siegel's report and testimony that Benard asserts is relevant and admissible is Siegel's diagnosis that Hernandez suffers from Anti-Social Personality Disorder. See Siegel Aff. ¶ 10, at 3; Psychological Assessment at 12.  Anti-Social Personality Disorder is characterized, in part, by a primary symptom of deceitfulness, as indicated by repeated lying, use of aliases, or conning others. See Siegel Aff. ¶ 11, at 4. To reach this diagnosis, Siegel reviewed the diagnostic criteria listed by the DSM-IV-TR, which outlines seven diagnostic criteria. See id. ¶ 10, at 3. To sustain a diagnosis of Anti-Social Personality Disorder, a patient need only meet three of the seven diagnostic criteria listed. See id. Siegel determined that Hernandez met at least three of the diagnostic criteria, possibly all seven. See id.

## DISCUSSION

Hernandez asks the Court to exclude Siegel's testimony,[1] arguing that it is not relevant to the issues that the jury will have to decide and is, therefore, not helpful to the trier of fact. Benard contends that Siegel's report and testimony are relevant to the issue of Hernandez' veracity and credibility, and they are, therefore admissible.

Benard offers Siegel as an expert witness. As such, the Court must consider the expert's proposed testimony and the methods the expert used in reaching his conclusions in the context of the particular facts and claims of the case to determine whether to admit or exclude the expert's

---

[1] Hernandez' motion addresses psychological evaluation testimony and medical treatment records in general, not specifically Siegel's evaluation, testimony and records. Benard's Response to this motion argues generally that such records are relevant and admissible, but only specifically disputes the motion with regard to Siegel. The Court assumes, therefore, that the only dispute between the parties is as to Siegel's testimony and report and that Benard does not intend to introduce other psychological or medical records or testimony.

testimony and report.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999)(holding that the court must perform a "gatekeeping inquiry . . . tied to the facts of a particular case" to determine if the proposed expert testimony is properly admitted); see also Daubert v. Merrell Dow Pharms., Inc., 509 US 579, 592-93 (1993).  This inquiry requires the court to consider whether the proposed testimony is not only reliable, but also relevant pursuant to the standards of rule 702 of the Federal Rules of Evidence.  See Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999)(holding that the proponent of the evidence must also show that the expert's opinion is sufficiently tied to the facts of the case to satisfy rule 702's relevancy requirements).

**I.     RELEVANCE**

Rule 702 of the Federal Rules of Evidence requires an expert's testimony to be relevant so that it will "assist the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702.  Benard concedes that he retained Siegel to address Hernandez' alleged psychological injuries and that Hernandez has withdrawn all claims for such injuries in this case.  The fact of any psychological damages is, therefore, no longer in issue.  The question that Siegel's report and testimony seek to address is no longer a part of this case, thereby substantially reducing any relevance either might still have in this case.

Benard asserts that Siegel's conclusions relate to Hernandez' credibility and veracity and are, thus, still relevant.  With regard to the first aspect of Siegel's conclusions -- regarding the TOMM test -- the Court disagrees.  The TOMM test, as Siegel explains it, specifically measures "malingering," which occurs when an individual lies about or greatly exaggerates his physical or psychological symptoms.  The test does not, as Siegel describes it by reference to the American Psychiatric Association's guidelines, address a general tendency or characteristic of a person to lie

or exaggerate in all circumstances. Because Hernandez' physical and psychological symptoms are no longer before the Court, the Court finds that the TOMM test is not relevant to the determination of a fact still in issue.

With regard to the second aspect of Siegel's report, the conclusion is somewhat different. Siegel's diagnosis of Hernandez as suffering from Anti-Social Personality Disorder does address a general symptom of deceitfulness. This aspect of the report is, therefore, marginally or minimally relevant to the case in that character and veracity are always relevant for impeachment purposes. This is the only basis, however, that the Court finds any of Siegel's testimony or report to be relevant under the standards of rule 702.

## II.     RELIABILITY

Expert testimony or evidence must also be reliable. Recently, the United States Court of Appeals for the Tenth Circuit applied the Daubert and Kumho tests in Dodge v. Cotter Corp., 348 F.3d 1212 (10th Cir. 2003), reiterating the four basic tests for the reliability and admissibility of expert opinion testimony as follows: (i) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (ii) whether the opinion has been subjected to peer review; (iii) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (iv) whether the theory has been accepted in the scientific community. See id. at 1222 (quoting Daubert, 509 U.S. at 593-94). This list is not intended to be an exclusive checklist. See Kumho Tire Co. v. Carmichael, 526 U.S. at 150. To the contrary, district courts applying Daubert have broad discretion "in both deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." United States v. Velarde, 214 F.3d 1204,

1208-1209 (10th Cir. 2000).

The Tenth Circuit, in Dodge v. Cotter, stated that the district court should generally focus on an expert's methodology rather than the conclusions it generates, but noted that an expert's conclusions are not immune from scrutiny. See Dodge v. Cotter, 328 F.3d at 1222. The Dodge v. Cotter opinion quotes with approval language from General Elec. Co. v. Joiner, 522 U.S. 136 (1997), to the effect that a court may conclude that there is simply too great an analytical gap between the data and opinion proffered, and that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Dodge v. Cotter, 328 F.3d at 1222 (quoting General Elec. Co. v. Joiner, 522 U.S. at 146).

> Under Daubert, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology. It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Dodge v. Cotter, 328 F.3d at 1222-1223 (internal quotation marks and citations omitted).

Siegel's Supplemental Affidavit indicates that the TOMM test is generally considered a reliable tool and provided the Court with a list of references and case studies discussing use of the TOMM. These assurances, however, go to the general reliability of the TOMM. Siegel has not provided the Court with any reason to conclude that the results of Hernandez' TOMM tests may be extrapolated to reach conclusions about his general personality or characteristics outside the

particular characteristic of "malingering." Under the standards set forth by the Tenth Circuit, the Court concludes that Siegel's testimony does not meet the reliability standard insofar as the TOMM test does not reliably predict an individual's overall characteristics, but rather specific characteristics of lying or exaggerating physical or psychological symptoms.

With regard to Siegel's diagnosis of Hernandez as suffering from Anti-Social Personality Disorder, Siegel does not specifically address the diagnosis' reliability. He does indicate that it is a recognized disorder and the characteristics are acknowledged and listed by the American Psychiatric Association. Thus, as a general matter, Benard has not established that the methodology and conclusion that Hernandez has this disorder are reliable.

As described above, however, this evidence will have to go to impeachment of Hernandez' credibility and veracity, the only issues remaining in the case for which it is even marginally relevant. At the hearing, Benard stated that he specifically would like to be able to refute Hernandez' assertion that he did not resist arrest by pointing to Siegel's testimony and report. Siegel's report does not at any point conclude that Hernandez is likely lying about whether or not he resisted arrest. In fact, Siegel's report is confined to the issue of whether Hernandez was likely lying or exaggerating about his alleged physical and psychological injuries for the purposes of this lawsuit.

The Court is not convinced that Siegel's testimony and report are appropriately reliable for the purpose of impeaching Hernandez' credibility and veracity. To the extent that Siegel came to the conclusion that Hernandez' assertions were incredible or untrue, such conclusions were specific to issues no longer in this case. Benard has offered no support for extrapolating further from Siegel's conclusions. As noted above, the Tenth Circuit requires not only an expert's methodology to be reliable, but also the expert's conclusions with regard to the specific purpose for which they are

offered. The Court finds that Siegel's diagnosis that Hernandez suffers from Anti-Social Personality Disorder cannot be reliably offered for the purpose of impeaching Hernandez' credibility or veracity on the issues remaining in this case.

### III.    PREJUDICE

Even if the Court were to determine that Siegel's testimony and report meet the requirements of the Tenth Circuit and the Supreme Court for an expert witness, the evidence must still pass the requirements of rule 403 of the Federal Rules of Evidence. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Benard intends to introduce this evidence to show that Hernandez is generally a deceitful person whose nature it is to lie and/or exaggerate. The Court has determined that the only possible relevance Siegel's testimony and report have is for the purpose of impeaching Hernandez' credibility and veracity. The Court has also noted, however, that Benard has not presented any conclusions by Siegel that specifically relate to the remaining issues in the case -- for example, Siegel does not address whether his examination suggests that Hernandez is lying about whether or in what manner he resisted arrest. Rather, Siegel's testimony specifically relates to whether Hernandez' claims of physical and/or psychological injury were false or exaggerated. The probative value of Siegel's testimony and report for establishing any of the remaining issues in this case is therefore minimal.

The prejudice to Hernandez in allowing this evidence in is, however, great. Hernandez has withdrawn a great deal of his case in an effort to exclude from relevance all evidence relating to his criminal history and original claims of psychological and physical injury. Benard seeks to introduce

Siegel's report and testimony to impeach Hernandez' credibility and veracity by, in essence, stating that he is a clinically proven liar. This evidence is clearly prejudicial and, the Court feels, is unduly prejudicial. Because Siegel's testimony and report have minimal probative value while the potential for prejudice is great, the Court finds that it should exclude Siegel's testimony and report. The Court will grant the motion.

**IT IS THEREFORE ORDERED** that the Plaintiff's Motion in Limine to Exclude Psychological Evaluation Testimony and Medical Treatment Records From Any NM Department of Corrections Facility is granted. The Defendant's expert Edward Siegel and his written report will be excluded from the trial in this case.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Anthony J. Ayala
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Norman F. Weiss
Alisa R. Wigley
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendant Tom Benard*

Stephanie Griffin
Assistant City Attorney
Albuquerque, New Mexico

    *Attorney for the Defendant City of Albuquerque*