## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROBERT HERNANDEZ,

      Plaintiff,

vs.                                No. CIV 02-0333   JB/RHS

CITY OF ALBUQUERQUE, and
TOM BENARD,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the City Defendant's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint Against it and Requesting Dismissal of Plaintiff's Claim for Punitive Damages Against City Defendant, filed August 8, 2003 (Doc. 164). The Court held a hearing on this motion on October 21, 2003. The primary issue is whether the Plaintiff, Robert Hernandez ("Hernandez"), has established that there is a genuine issue of material fact whether the City failed to train Defendant Tom Benard ("Benard") so as to preclude the Court from granting the Defendant City of Albuquerque ("the City") summary judgment as a matter of law on the municipal liability claim against it. Because the Court concludes that Hernandez' municipal liability claim fails as a matter of law, the Court will grant the City's motion for summary judgment on the federal claim against it; decline to exercise supplemental jurisdiction over the remaining state law claims against the City; and dismiss the City as a party defendant in this case.

## BACKGROUND

In responding to the City's motion, Hernandez does not specifically dispute the City's statement of facts or present evidence that rebuts any of the facts set forth by the City in its motion

for summary judgment.  Local rule 56(b) for the United States  District Court for the District of New

Mexico provides in relevant part that "[a]ll material facts set forth in the statement of the movant will

be deemed admitted unless specifically controverted."  D.N.M.LR-Civ. 56(b).  Hence, Hernandez'

failure to dispute any of the statement of facts set forth in the City's supporting memorandum means

that this Court must deem those facts to be admitted for purposes of deciding this summary judgment

motion.  See id.

On April 14, 2003, Hernandez filed an Amended Complaint in which he alleges that the

"Defendants City of Albuquerque and Albuquerque Police Department failed to train and supervise

Defendant Benard.  It is the custom of these Defendants to encourage the use of excessive force

during the arrest of non-violent suspects."  Plaintiff's Amended Complaint ¶ 2.13, at 4, filed April 14,

2003 (Doc. No. 111).[1]  Hernandez also asserts allegations against the City throughout his Amended

Complaint whereby he contends that the City acted in its "individual capacity" and committed acts

against him.  Amended Complaint ¶¶ 1.2, 3.1, 3.2, 3.3, 3.4, 3.5, at 2, 5, 6.

The City's Police Department ("the Department") has a policy requiring all police officers to

undergo training on an annual basis.  See Albuquerque Police Department Policies and Procedures

Manual, Administrative Order 3-82.  Hernandez cannot name an officer who failed to undergo any

Maintenance of Effort training or training through the Albuquerque Police Academy.  See Plaintiff's

Answer to Interrog. No. 6.

The Department has written policies on the use of force.  See Albuquerque Police Department

Policies and Procedures Manual, Procedural Orders 2-52.  The Department has written policies which

_____

[1] Albuquerque Police Department was later dismissed as a Defendant in this case.  See Order,
filed October 1, 2002 (Doc. 4).

-2-

provide that each police officer must fulfill the duties of his/her assignment and obey the orders of his/her superior officers.  See Albuquerque Police Department Policies and Procedures Manual, Administrative Order 3-11-4.

The Department has supervisory positions that include the rank of Sergeant, Lieutenant, Captain, Deputy Chief, and Chief of Police.  See Albuquerque Police Department Policies and Procedures Manual, Administrative Order 3-11.  The Department has written policies concerning the duties and responsibilities of superior and commanding officers over subordinate officers.  See Albuquerque Police Department Policies and Procedures Manual, Administrative Order 3-16; id. 3-17.  The Department has a written policy that provides that "a supervisor is a superior officer or professional employee who supervises and directs the activities of personnel assigned to them." Albuquerque Police Department Policies and Procedures Manual, Administrative Order 3-18.

The Department has an Internal Affairs Unit that is responsible for investigating allegations of misconduct by department personnel.  See Albuquerque Police Department Policies and Procedures Manual, Administrative Order 3-41. While Hernandez complains about the investigation of this matter, Hernandez has not submitted evidence of wide-spread abuse for failure to supervise.

Hernandez cannot state the date that the "custom" as alleged in Paragraph 2.13 of his Amended Complaint became effective.  See Plaintiff's Answer to Interrogatory No. 4.  Hernandez has no documents, reports, memoranda, tapes, transcriptions, recordings, and/or photographs that evidence the allegations contained in Paragraph 2.13 of his Amended Complaint.  See Plaintiff's Answer to Request for Production Nos. 1 and 3.[2]

---

[2] Interrogatory Nos. 2, 3, and 4 and Request for Production Nos. 1 and 3 refer to ¶ 19 of the initial complaint that Hernandez filed on September 4, 2001.  This paragraph is identical to ¶ 2.13 of Hernandez' Amended Complaint, filed on April 14, 2003.

Based on the record before the Court, the Court must find that: (i) the City has policies and procedures in place concerning training and supervision of it officers; and (ii) there is no evidence that any officer has failed to undergo any Maintenance of Effort training or training through the Albuquerque Police Academy.

Rather than disputing the City's facts, Hernandez refers to the affidavit of his expert, Maurice Moya. Moya testified during his deposition that he has taught classes at the Albuquerque Police Academy. See Deposition of Maurice Moya at 44-45 (taken June 26, 2003). Moya also testified that the Department has policies on the use of force, and that he has written some of the policies contained in the Department's Standard Operating Procedures Manual. See id. at 43, 45.

Hernandez' expert states that ten hours of training with an expandable metal baton is an insufficient amount of training. See Affidavit of Maurice L. Moya ¶ 4, at 1 (executed August 24, 2003. Moya states that the City's policy does not mandate specialized and Department of Public Safety advanced training, and provides only a ten to fifteen minute video tape training on changes in procedures or policies. See id. ¶ 7, at 2. Moya contends that the City provided no specialized training on the issue of how to distinguish when to use non-deadly or less than lethal force. See id. ¶ 5, at 2. Moya opines that two hours of Attitude and Professionalism training to teach its officers the ability to exhibit appropriate behavior in normal and stressful situations is insufficient training. See id. ¶ 6, at 2. Moya also states that the City's actions with regard to this incident indicate that the City has a generally accepted, though unwritten, custom that officers are taught to have "tunnel vision" and not to report injury to suspects. See id. ¶ 10, at 3. Moya says that Captain Paul Chavez was following the Department's established custom and positively encouraged the City's officer's use of force on arrestees when recommending disciplinary sanctions of a written reprimand for Benard's

misconduct.  See id. ¶ 12, at 3.  Moya asserts that the City failed to discipline its officers when they failed and/or delayed the initiation of a criminal investigation into Benard's misconduct for approximately five months.  See id. ¶ 11, at 3.

At the hearing on this motion, Hernandez withdrew his claims for punitive damages and inadequate supervision.  See Transcript of Hearing at 130:23-131:1 (October 21, 2003) ("Transcript").[3]  The only § 1983 claim that remains against the City is for inadequate training.  See Transcript at 131:14-16.[4]  There is no claim against the city as an individual.[5]  The only state claims that remain are for inadequate training and respondeat superior under the New Mexico Tort Claims Act ("NMTCA").  See id. at 131:16-19.  Hernandez opposes the City's motion to dismiss the remaining claims against the City.

## STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT

"Summary judgment procedure is properly regarded not as a disfavored procedural short cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).  Summary judgment is appropriate when the Court determines that

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

[4] While Hernandez used the terms "custom and policy" in his briefing and at the hearing, he did so in the context of a claim for inadequate training.  He does not appear to have a separate claim alleging that the city had a custom and/or policy which encouraged excessive force.  The Court will restrict its analysis in this opinion to the claim for inadequate training.

[5] Hernandez' Amended Complaint alleges throughout that the City acted in its "individual capacity" and committed various acts against him.  A municipality, however, cannot be held individually liable as a matter of law.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Hernandez concedes that he has no claim against the city in its individual capacity.  See Transcript at 149:20-21.

there is "no genuine issue as to any material fact," and the moving party is "entitled to judgment as

a matter of law." Thrasher v. B&B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993); Fed. R. Civ. P.

56(c). Although summary judgment is a useful tool for isolating and terminating unsupported claims,

see Celotex Corp. v. Catrett, 477 U.S. at 323-24, courts should act with caution in granting summary

judgment, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

> Under rule 56(c) of the Federal Rules of Civil Procedure, the movant bears the initial
> responsibility of informing the district court of the basis for its motion, and identifying
> those portions of the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, which [the movant] believes
> demonstrates the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). The movant may negate

elements of the non-movant's factually unsupported claims or defenses "with or without supporting

affidavits." Id. To properly respond, the non-moving party "must go beyond the pleadings and by

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate specific facts showing that there is a genuine issue for trial." Id. at 324 (citing Fed. R. Civ.

P. 56(e)).

The standard for summary judgment is essentially the same as the standard for a judgment as

a matter of law under rule 50(a), which provides that the "trial judge must direct a verdict if, under

the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty

Lobby, Inc., 477 U.S. at 250(citations omitted). In ruling on a motion for summary judgment, the

district court should not weigh the evidence and determine the truth of the matter. See id. at 249.

Instead, this Court should ask whether the evidence is "such that a reasonable jury could find a

verdict for the non-moving party." See id. at 248.

"All facts and reasonable inferences must be construed in the light most favorable to the non-

moving party." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th

Cir. 1995)(citations omitted).  The Court must consider the evidence of the non-moving party as true

and draw justifiable inferences arising from the evidence in his favor.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 255 (1986).  Accordingly, if there is any evidence in the record from which a

reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.

See id. at 249; Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996).

       If the non-moving party presents evidence that is merely colorful or not significantly

probative, the entry of summary judgment is proper.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

at 249-50.  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the [non-moving

party's] position will be insufficient . . . ."  Id. at 252.  Thus, "[w]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for

trial.'"  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting

First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

       On the other hand, "all that is required is that sufficient evidence supporting the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

truth at trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. at 288-89.  Here, to survive

summary judgment, Hernandez must go beyond his pleadings and show that there is evidence of

specific acts that demonstrate that the City exhibited deliberate indifference towards him in its failure

to properly train its officers.  See City of Canton v. Harris, 489 U.S. 378 388-92 (1989); Medina v.

City & County of Denver, 960 F.2d 1493, 1500 (10th Cir. 1992).  Arguments of counsel are not

evidence and are insufficient to raise issues of material fact to preclude summary judgment.  See

Fritzsche v. Albuquerque Mun. Sch. Dist., 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).

**LEGAL ANALYSIS**

I.     **THE COURT WILL NOT CONSIDER MOYA'S AFFIDAVIT WHEN RULING ON THE MOTION FOR SUMMARY JUDGMENT.**[6]

Normally, an affidavit submitted in support or in opposition to a motion for summary judgment must comply with rule 56(e) of the Federal Rules of Civil Procedure, which provides that the affidavit must be "made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). When an expert submits an affidavit, however, he need not base his testimony upon personal knowledge, provided that the affidavit complies with rules 702-705 of the Federal Rules of Evidence. See City of Chanute, Kan. v. Williams Nat. Gas Co., 743 F. Supp. 1437, 1443-44 (D. Kan. 1990). "'Although an expert affidavit need not include details about all of the raw data used to produce a conclusion, or about scientific or other specialized input which might be confusing to a lay person, it must at least include the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment.'" Williams v. Ford Motor Co., 187 F.3d 533, 543-44 (6th Cir. 1999)(quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993)).

When considering the admissibility of an expert affidavit for purposes of a summary judgment motion, a court must first determine if the expert's opinion would be admissible at trial. See City of Chanute, Kan. v. Williams Nat. Gas Co., 743 F. Supp. at 1444. Next, "admissible evidence in the

---

[6] The Court has excluded certain of Moya's testimony and Moya as a witness from the trial between Hernandez and Bendard. See Memorandum Opinion and Order, filed January 21, 2004 (Doc. 294). Because the Court granted the Defendants' Motion for separate trials, see Order, filed January 2, 2004 (Doc. 261), the Court must still determine whether it will consider Moya's affidavit and deposition testimony in deciding this motion with regard to Hernandez' claims against the City.

affidavit must be examined to determine whether it presents a genuine issue of material fact to prevent summary judgment." Id.

> In determining whether an expert's opinion is admissible at trial, a court must consider the following: whether the person is competent to testify as an expert; whether such testimony would be helpful or assist the trier of fact in its determination or understanding of relevant issues; and whether the facts or data upon which the expert bases his opinion are the types of facts or data reasonably relied upon by experts in the particular field in forming opinions on the subject.

Id. (citing Fed. R. Evid. 702 and 703, and Spect v. Jensen, 853 F.2d 895, 807 (10th Cir. 1988)).

> [T]o the extent an expert's affidavit contains inadmissible evidence, the affidavit is subject to a motion to strike and will not be considered for purposes of a summary judgment motion. If an affidavit presents an expert's opinion which is admissible in whole or in part, the court will consider such an affidavit to the extent it is admissible.

City of Chanute, Kan. v. Williams Nat. Gas Co., 743 F. Supp. at 1445.

"It is important to remember, however, that once the moving party has met its initial burden, a summary judgment motion is not precluded just because the nonmoving party has presented an expert's affidavit which contains some admissible evidence." Id. The contents of Moya's affidavit include inadmissible material. Further, the affidavit fails to create genuine issues of material fact to preclude the City's entitlement to summary judgment. The Court will thus strike Moya's affidavit.

Moya's affidavit is deficient in several respects. First, while the Court can glean some of Moya's background from his deposition, the affidavit does not set forth what specific qualifications Moya has an expert witness. See Fed. R. Civ. P. 56(e); Fed. R. Evid. 702, 703 (stating that a person must be competent to testify as an expert). The affidavit does not mention what specific training and professional experience Moya has as a police officer. Instead, he says he is an expert on the basis that Hernandez has retained him as an expert. See Moya Aff. ¶ 2, at 1. The statements in the affidavit do not meet rule 702 and 703 standards. See Fed. R. Evid. 702, 703.

Second, Moya does not identify in his affidavit what "pertinent documentation" he is referring to in paragraph 3 to form the basis for his opinion.  See, e.g., Williams v. Ford Motor Co., 187 F.3d 533, 543 (6th Cir. 1999)(finding that expert's opinion was insufficient to create genuine issues of material fact because it was conclusory and unsupported by any specific data); Boyd v. State Farm Ins. Co., 158 F.3d 326, 331 (5th Cir. 1998)("For the purposes of summary judgment under Fed. R. Civ. P. 56(e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion."); City of Chanute, Kan. v. Williams Nat. Gas Co., 743 F. Supp. at 1445 ("In order to be of any value to the judicial process at the summary judgment stage, an expert's opinion must, at a minimum, set forth a process of reasoning beginning from a firm foundation.")(internal quotation marks and citation omitted).  Moya mentions the curriculum for the 72d Police Recruit Class and to various documents that were dated after the April 23, 2000 incident at issue here.  His commentary on these documents, however, consists of conclusions and opinions that he does not support with data.  This failure to explain why he reaches his ultimate opinions is the primary problem with his affidavit.

For example, Moya states in paragraphs 4 through 7 of his affidavit that the number of hours of training given to the 72d class is "insufficient."  Moya offers these conclusions without stating or referring to standards or to guidelines that would tell the Court what amount of hours equates to a sufficient amount of training.  See, e.g., Clark v. Takata Corp., 192 F.3d 750, 757 (7th Cir. 1999)("An expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless.")(internal quotation marks and citations omitted).  The irony is that, if the Court were to accept Moya's conclusions about how inadequate the Department's training is as true, then it would be difficult for the Court to find Moya is qualified as an expert on excessive force or

-10-

on the use of a baton, because he obtained the bulk of his law enforcement training and experience through the Albuquerque Police Department.  See Moya Depo. at 30-32, 48-49.

Moya also offers legal opinions in his affidavit.  For instance, Moya opines in paragraph 17: "The review of the information in the Investigation file in this matter shows a custom or policy of deliberate indifference and failure to institute a proper policy of training and supervision by the City of its police force."  These issues are for the Court or for the jury to decide, and if Moya were present at trial, the Court would not allow him to make such statements to the jury.  See Spect v. Jensen, 853 F.2d at 805, 809-10 (holding that a court cannot permit a witness to make legal conclusions and to define the law of a case).  He needs to show and explain why the City acted inappropriately, not just give a conclusion.

In sum, Moya's affidavit contains ultimate conclusions, not an analysis that leads the Court to those ultimate conclusions.  Such an expert affidavit does not help the Court in what it needs to do.  "[A] genuine issue of material fact cannot be shown from merely conclusory allegations."  City of Chanute, Kan. v. Williams Nat. Gas Co., 743 F. Supp. at 1445.

"Where an expert presents nothing but conclusions – no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment."  Williams v. Ford Motor Co., 187 F.3d at 544 (internal quotation marks and citations omitted).  The Tenth Circuit has rejected affidavits that contain only or mostly conclusions similar to Moya's.  See, e.g., Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001)("We therefore follow the well-settled principle that an expert opinion may not be sufficient to overcome summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact.")(internal quotation marks and citation omitted).  Likewise, the judges of this District have also

-11-

rejected affidavits by Moya.  See Tripp v. City of Socorro, CIV 01-0177 BB/WWD, Memorandum

Opinion and Order at 8 n.5 (D.N.M., filed December 17, 2001)(declining to consider Moya's

affidavit; "Where an expert's affidavit omits crucial facts or is based on an obviously incomplete

review of the record, it is not sufficient to withstand a motion for summary judgment."); Sanchez v.

City of Albuquerque, CIV 00-0950 LH/WWD,  Order at 1 and 2 (D.N.M., filed September 14,

2001)(granting motion to strike Moya's affidavit); Martinez v. City of Albuquerque, CIV 96-0323

JP/JHG, Order at 1 and 2 (D.N.M., filed March 6, 1998)(granting motion to strike Moya's affidavit

as untimely and insufficient).

Hernandez submitted Moya's affidavit as an exhibit in an effort to create an issue of fact.

Because the Court does not accept the affidavit, it does not create any issues of fact.

## II.    HERNANDEZ DOES NOT CREATE A GENUINE ISSUE OF MATERIAL FACT WHETHER THE CITY FAILED TO ADEQUATELY TRAIN ITS OFFICERS.

Hernandez alleges in his Amended Complaint that the City failed to train its officers regarding

the use of excessive force during the arrest of non-violent suspects.  See Plaintiff's Amended

Complaint ¶ 2.13, at 4.  Hernandez is thereby asserting a § 1983 municipal liability claim against the

City.  There is, however, an insufficient legal and factual basis for such a claim.

### A.    HERNANDEZ DOES NOT ESTABLISH THE PREREQUISITES FOR MUNICIPAL LIABILITY.

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation custom, or usage
of any state . . . , subjects, or causes to be subjected, any citizen of the United States
or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the
party injured in an action at law, suit or equity, or other proper proceeding for
redress.

Federal law under § 1983 considers municipalities, such as the City, "persons" to whom § 1983 liability applies.  See Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 690 (1978).  As such, "it is when the execution of a government's policy or custom . . . inflicts the injury that the government, as an entity, is responsible under § 1983."  Id. at 694.

In Ware v. United School Dist. No. 492, 881 F.2d 906 (10th Cir.1989), the United States Court of Appeals for the Tenth Circuit outlined the basis for municipal liability under § 1983:

> Liability under section 1983 cannot rest upon the doctrine of respondeat superior.  See, City of Canton, 109 S.Ct. At 1203.  A direct causal link must exist between the acts of the governing body sought to be held liable and the alleged constitutional deprivation.  Id. Such a causal connection may be established when the governing body has delegated its decision-making authority to the official whose illegal conduct caused the harm, see Pembaur, 475 U.S. at 485, 106 S.Ct. 1301, or when the governing body retains its decision-making authority but exercises it with deliberate indifference to the constitutional rights of those affected by its decisions, see City of Canton, 109 S.Ct. at 1204-1206; Smith v. Rowe, 761 F.2d 360, 368-69 (7th Cir. 1985).

881 F.2d at 912-13.  A municipality thus may not be held liable under § 1983 solely because it is an employer.  See Monell v. Department of Social Servs., 436 U.S. 658, 691-92 (1978).  Instead, "[a] plaintiff suing a municipality under Section 1983 must show: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation."  Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).

Hernandez continues to pursue § 1983 claims against the City by attempting to prove specific facts to demonstrate that the City exhibited deliberate indifference towards him in its failure to properly train its officers.  See Brown v. Gray, 227 F.3d 1278, 1286 (10th Cir. 2000)(acknowledging that court can properly find city liable under § 1983 where the officer's misconduct is the result of

-13-

the city's failure to train officer).  Benard denies committing any constitutional infraction against Hernandez, and hence there are factual disputes concerning whether Hernandez can meet the first required element of proof to establish municipal liability.  There is, however, no dispute -- and, therefore, no genuine issue of material fact -- that the City was not the moving force behind Benard's alleged violation.

**B.   HERNANDEZ DOES NOT PRESENT SUFFICIENT EVIDENCE TO CREATE A GENUINE ISSUE OF MATERIAL FACT REGARDING HIS FAILURE TO TRAIN CLAIM.**

Inadequacy of police training may serve as the basis of municipal liability under § 1983 if the failure to train amounts to deliberate indifference to the rights of persons whom the police come into contact.  See City of Canton v. Harris, 489 U.S. at 388.  Accordingly, a city may be liable in a § 1983 action brought for excessive use of force by the police "[w]here there is essentially a complete failure to train or training that is so reckless or grossly negligent that future misconduct is almost inevitable." Houston v. Reich, 932 F.2d 883, 888 (10th Cir. 1991)(quoting Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988)).  The United States Court of Appeals for the Second Circuit has held that an individual act of brutality by a city employee may be the basis for municipal liability where it arises from a municipal policy of adequate training "so grossly negligent to constitute 'deliberate indifference.'"  Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979).

Hernandez alleges that the City failed to properly train its officers in the use of reasonable force.  See Plaintiff's Amended Complaint ¶ 2.13, at 4.  To establish a municipality's liability for inadequate training on the use of force, Hernandez must show: (i) Benard exceeded constitutional limitations on the use of force; (ii) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (iii) the inadequate training demonstrates

-14-

a deliberate indifference on the City's part towards persons with whom the police officers come into

contact; and (iv) there is a direct causal link between the constitutional deprivation and the inadequate

training.  See Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d at 1318 (citing Allen

v. Muskogee, 119 F.3d 837, 841 (10th Cir. 1997)).  See also City of Canton v. Harris, 489 U.S. at

389-90.  Hernandez has not satisfactorily raised a genuine issue of material fact as to all of these

elements.

    The City has policies and procedures in place to train officers.  The City requires each of its

officers to undergo annual training.  Hernandez does not argue that there is no training at all.  See

Transcript at 149:9-13.  There is no dispute that the City has a training program on the use of force

and on excessive force.  There is also no evidence that Benard or any other officer did not get this

training.  Hernandez' only evidence on this claim is Moya's affidavit, which this Court has determined

it need not consider.

    Even if the Court were to consider Moya's affidavit for purposes of this motion, the Court

would still grant the motion.  As noted above, Moya concludes  that the academy training for the 72d

Police Academy class is "insufficient."   The only evidence on this point is Moya's affidavit.  But the

facts are that the training for the Albuquerque Police Department is nationally accredited and that

"[t]he department requires that every two years that officers go through the MOE training process."

See Moya Depo. at 31:20-22; id. at 41.  The MOE training includes training on the use of the ASP

baton.  See id. at 36, 38, 49.  Moya does not deal with these items.  And outside of the curriculum

for the 72d Police Academy class, Moya does not mention the remaining training materials contained

in the five volumes of notebooks, which includes the use of force training.

     Instead, Hernandez argues that the City only requires a total of ten hours of training for its

-15-

officers with the expandable metal baton, eight hours for fourth amendment rights, and sixteen hours for use of force training.  See Moya Aff. ¶ 4, at 1.  Hernandez asserts that the City knew that its police officers would be required to arrest fleeing felons and armed its officers with expandable metal batons, in part, to allow them to accomplish this task, without providing its officers with training in the constitutional limitations on the use of force.

Hernandez also argues that the officers who are effectuating an arrest have discretion whether to use non-deadly or less than lethal force.  Hernandez further contends that the City's lack of training relating to the use of non-deadly force directly relates to its officers' failure to observe a suspect's fourth amendment rights under the United States Constitution when making an arrest.

Hernandez contends that, when city policymakers know that their police officers will be required to arrest fleeing felons, and arm their officers with expandable metal batons to effect that result, the court should find that the need to train their officers in the constitutional limitations on the use of force is so obvious that failure to do so is a deliberate indifference to constitutional rights.  See City of Canton v. Harris, 489 U.S. at 390.

Hernandez contends that the minimal training that the City provides its officers in fourth amendment rights and in the use of the expandable metal baton is so grossly negligent, when further training is so obvious, that it constitutes deliberate indifference.  Hernandez argues that the most telling aspect of the lack of training is the apparent policy and custom of providing wide discretion to arresting officers, despite its written policy prohibiting excessive force.  Hernandez maintains that this lack of training, coupled with Benard's actions, shows that the City is guilty of deliberate indifference to an arrestee's constitutional right to be free from excessive force.  Herandez argues that this argument is sufficient to raise a question of fact, precluding summary judgment.

-16-

Hernandez and Moya have not established that what the City did with its training displays deliberate indifference to the rights of citizens, as the Tenth Circuit's decision in <u>Myers v. Oklahoma County Bd. of County Comm'rs</u> requires.  Moya does not state or refer to any standards or guidelines as to what would be the proper number of hours that Benard and other City officers should receive. From reading his affidavit, the Court does not know if it is one minute more, one hour more, or one day more.  Moya also does not  educate the Court what more needs to be said; the Court does not know what was not said that needed to be said.  There is no reason to require more training on a subject if there is nothing more to be said.  Finally, Moya does not address the quality of the City's training.  Sometimes a succinct presentation can cover an area better than a longer presentation.  Just pointing to the length of time and calling that amount of time inadequate is not helpful to the Court.

To educate the Court why training was insufficient, Moya needed to explain what would be sufficient training.  An expert must substantiate his opinion, and in this case, that means giving the Court some yardstick by which to measure the City's training.  Moya needs to explain how much more time is needed and how adequate training would be different.  Instead, Moya provides only conclusions.

Finally, even if the Court were to assume that the City did not adequately train Benard, this assumption alone would not establish municipal liability.  The fact that "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . ." <u>City of Canton v. Harris</u>, 489 U.S. at 390-91.  There is no causal connection between what Moya contends was inadequate training and what Benard allegedly did here.  Hernandez has not presented sufficient evidence that any alleged failure to train is  widespread and was thereby the "moving force" behind the alleged constitutional infraction against him.  See <u>Myers v. Oklahoma County Bd. of County</u>

Comm'rs, 151 F.3d at 1316; Thelma D. v. Board of Educ., 934 F.2d at 933.  The Court does not believe that a reasonable fact finder could find the City liable under § 1983 in this claim.

In conclusion, the Court will dismiss in its entirety Hernandez' municipal liability claim because he does not have sufficient evidence to create genuine issues of material fact that the City failed to train any of its officers.

**III.    BECAUSE THERE IS NO FEDERAL CLAIM AGAINST THE CITY, THE COURT WILL DECLINE  TO EXERCISE JURISDICTION OVER THE STATE CLAIMS AGAINST THE CITY.**

The Court has the authority to dismiss or remand the remaining state claims against the City to state court.  The applicable statute is 28 U.S.C. § 1367.  The language of the statute itself, as well as cases interpreting that language, indicates that the Court can dismiss or remand the remaining state claims against the City.

Because the state law claims in this case are "so related to [the federal claims] that they form part of the same case or controversy, " the Court has supplemental jurisdiction over the state claims against the City.  The Court may decline to exercise supplemental jurisdiction if one of the following four conditions are met: (i) the claim raises a novel or complex issue of state law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  If one of the exceptions is met, the Court may dismiss or remand claims within a lawsuit while retaining jurisdiction over other claims in the same lawsuit.

The first exception applies.

Where there is no state precedent or direction on the issue, a Federal District Court's

resolution of the question would be, at best, a prediction of subsequent state law developments--a tentative answer  which may be displaced tomorrow by a state adjudication.  Under such circumstances, and especially where a determination of the issue could possibly obviate the need to decide the constitutionality of the state statute, the federal court may decline to hear the matter.  Where plaintiff's cite no authorities on point that address the state questions at issue, to support its contention that the issues raised by it are not novel, the court will decline to exercise supplemental jurisdiction over the state law claims even though the federal and state claims arise out of the same operative set of facts and will probably involve virtually the same proof at trial.  There is no reason for the District Court to embroil itself in a dispute between the state and a local government and to make a novel and potentially significant interpretation of state law.  The judicial economy factor should not be the controlling factor, and the federal court should defer to the state courts where novel questions of state law are raised, even if to do so would not be the most judicially or monetarily economical approach.

32A Am. Jur. 2d Federal Courts § 1337 (2003)(footnotes omitted).  The issue that the City raises fits within this exception because the state courts have not yet addressed it specifically.

The City argues that Hernandez did not meet the notice requirements of NMSA 1978, § 41-4-16 which requires that every person who claims damages under the NMTCA against a municipality must provide, within ninety (90) days of the occurrence, "written notice stating the time, place, and circumstances of the loss or injury[.]"  NMSA 1978, § 41-4-16(A).  Subsection B provides an exception to the written notice requirement where the governmental entity at issue has actual notice of the tort.

Hernandez claims that the City had actual notice in this case based on the police reports of the incident, interoffice memoranda, Internal Affairs reports, Criminal Investigation reports, tape recordings and television news segments all addressing the allegation that an officer struck a suspect -- Hernandez -- in the head with an expandable metal baton while the suspect was handcuffed.  Hernandez points to two state court cases addressing the "actual notice" exception under the NMTCA.  In City of Las Cruces v. Garcia, 102 N.M. 25, 690 P.2d 1019 (1984), the Supreme Court

-19-

of New Mexico addressed the notice provision of the NMTCA and determined that "under some circumstances, a police or other report could serve as actual notice under Subsection 41-4-16(B), but only where the report contains information which puts the governmental entity allegedly at fault on notice that *there is a claim against it*."  Id. at 27, 690 P.2d at 1021 (emphasis in original).  In Lopez v. State, 122 N.M. 611, 930 P.2d 146 (1996), the Supreme Court of New Mexico again addressed this provision, specifically looking at the phrase "likelihood that litigation might ensue" as the standard for whether proper notice has been given that there is a claim against the governmental entity at issue.  The court noted that "New Mexico courts consistently have applied the 'likelihood that litigation may ensue' standard, looking at whether, from the totality of circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation."  Id. at 615, 930 P.2d at 150.

While both cases do provide state course guidance on the parameters of the actual notice provision, these cases do not address the particular issue the City has raised: whether the actual notice has to include notice of all potential claims, or merely the fact that a tort has occurred from which some claims may be made.  Specifically, the City concedes that it had actual notice of a possible excessive force claim against Benard based on the materials Hernandez points to.  However, the City argues that nothing before service of Hernandez' Complaint on September 5, 2001 gave notice that the City would face a claim for inadequate training and/or supervision.

Hernandez did not provide any state authority on this point establishing that notice of the excessive force claim is sufficient notice to proceed with all claims, including claims for inadequate training and/or supervision.  Neither has the Court found such authority.  The Court, therefore, finds that this is a novel and complex issue of state law that the state courts should address rather than this

federal district court.

The fourth exception is also useful.  The Court has already granted a motion for separate trials.  The trial involving the City will be on state claims only.  The Court should not needlessly decide issues of state law.

The case of <u>Gregory v. Shelby County, Tennessee</u>, 220 F.3d 433 (6th Cir. 1999)  involved the Tennessee Tort Liability Act.  That Act creates exclusive jurisdiction in the state courts.  The United States Court of Appeals for the Sixth Circuit said that provision showed the state legislature's clear preference that state courts handle the determination of claims against the state government. The Sixth Circuit found that such a preference  showed that exceptional circumstances existed and affirmed the district court's decision to dismiss the state law claim.

The NMTCA contains a similar provision vesting the state courts with exclusive jurisdiction. <u>See</u> NMSA 1978, § 41-4-18(A)("Exclusive original jurisdiction for any claim under the Tort Claims Act shall be in the district courts of New Mexico. Appeals may be taken as provided by law.").  This provision shows that the Legislature prefers state courts to determine issues of governmental tort liability.  Because this case fits within the statutory exceptions outlined above, and in deference to the state Legislature's preference, the Court will decline to exercise supplemental jurisdiction over Hernandez' state law claims against the City.

**WHEREFORE, IT IS ORDERED** that the Defendant City of Albuquerque's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint against it and Requesting Dismissal of Plaintiff's Claim for Punitive Damages against City Defendant is granted in part and denied in part.[7]

---

[7]  The Defendants request attorney's fees and costs, but provide no basis for such an award.  Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception.  The Defendants point to no exception, and none appears available.

The Plaintiff's federal claims against the City are dismissed with prejudice.  The Plaintiff's state claims are dismissed without prejudice.  The Plaintiff's motion to dismiss any request for punitive damages is denied as moot.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Anthony James Ayala
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Norman F. Weiss
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Tom Benard*

Robert M. White, City Attorney
Victor E. Valdez
Stephanie Griffin
  Assistant City Attorneys
  City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for Defendant City of Albuquerque*